UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

**THE BANK OF NEW YORK MELLON
f/k/a THE BANK OF NEW YORK, AS
TRUSTEE FOR FIRST HORIZON
ALTERNATIVE MORTGAGE
SECURITIES TRUST 2004-AA5,**

        **Plaintiff,**

v.                                                      CASE No. 17-cv-00031-WES-PAS

**CHRISTOPHER PEMENTAL,
BARRINGTON HISTORICAL
SOCIETY, LLC and all other unknown
successors, assigns or distributees of
BARRINGTON HISTORICAL
SOCIETY, LLC,**

        **Defendants.**
_____/

**PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 (BNY Mellon), hereby replies to Defendant's objection to BNY Mellon's motion for summary judgment as follows:

**I.**

**The Material Facts are NOT in Dispute[1]**

In support of its motion for summary judgment, BNY Mellon filed a Statement of Undisputed Material Facts (Document No. 16-2) listing 22 undisputed facts. In his Statement of

---

[1] BNY Mellon would note for the record that neither the Defendant, nor any other individual, has filed a substantive affidavit in objection to BNY Mellon's motion for summary judgment. The Affidavit of Christina Mercurio seeks to authentic documents only and is not substantive in nature.

1

Disputed Facts (Document No. 23), Defendant agrees that the following facts are not disputed: 1[2], 2[3], 3, 4, 5, 7, 8, 9, 11[4], 13, 14[5], 18, 19, 20, 21[6] and 22. BNY Mellon will address the supposedly disputed facts that remain seriatim.[7]

    1.    <u>Fact No. 6:    The Original Note is Self-Authenticating</u>.

Defendant admits that he signed the original note. Statement of Disputed Facts, No. 6, p. 2. He then claims the "endorsement (sic) appears on a separate page." *Id*. In truth, and as the Court will see upon examination of the original Note, the indorsement is on the back of the third (signature) page of the Note. Thus, when the Note is copied/scanned for filing purposes, it appears as a separate page when, in fact, it is not.

Furthermore, Defendant's reference to the Pooling and Servicing Agreement ("PSA") in connection with the transfer of the Note, *id*., further evidences BNY Mellon's status as the holder

---

[2] It appears that Defendants only "dispute" with respect to fact no. 1 concerns BNY Mellon's address. Recognizing that Banks such as BNY Mellon have multiple addresses, this hardly seems worth the trouble and is certainly far from the kind of "dispute" of a "material" fact that could result in the denial of summary judgment.

[3] Undisputed fact no. 2 concerns Defendant's residence address which at the time the Complaint was filed, and all times relative thereto, was 19 Stanley Avenue, Barrington, RI, a fact Defendant admitted in his answer. See also Defendant's statement that material fact nos. 18 and 19 are not in dispute. Statement of Disputed Facts, Nos. 18 and 19, p. 16. Apparently, since then, Defendant has returned to the Property which is the subject of this judicial foreclosure action.

[4] The Statement of Disputed Facts makes no reference to fact no. 11, which was nonetheless admitted by Defendant in his answer.

[5] Defendant states that he "does not admit that he has defaulted. Rather he admits that he is delinquent in regard to these payments." Statement of Disputed Facts, No. 14, p. 5. This is a distinction without a difference. See also Complaint, ¶¶ 19 and 23; Answer ¶¶ 19 and 23, admitted, for further context and evidence that Defendant did in fact default under the terms of the Note and Mortgage.

[6] Undisputed fact no. 21 concerns an allegation in paragraph 25 of the Complaint concerning the records of the Tax Assessor for North Providence (as opposed to Barrington) and was admitted in the answer. Defendant now disputes this fact. Upon further reflection, in light of all of the other facts, either admitted or demonstrably indisputable, this fact is immaterial and can be ignored.

[7] It appears that Defendant restates his claims that certain facts are in dispute on pages 16 to 26 of his Memorandum of Law. This section is intended to address both.

thereof given that the indorsement on the Note is fully compliant with the indorsement required pursuant to the PSA.

Finally, as a matter of Rhode Island Law, the assignment of the Mortgage operates as an assignment/transfer of the Note as well. See R.I. Gen. Laws § 34-11-24 which states in relevant part that "[a]n assignment of mortgage substantially following the form entitled 'Assignment of Mortgage' *shall, when duly executed, have the force and effect of granting, bargaining, transferring and making over to the assignee, his or her heirs, executors, administrators, and assigns, the mortgage deed with the note and debt thereby secured*, . . . Bold and italics added for emphasis.

    2.    <u>Fact No. 10:    The MERS Assignment is Valid</u>.

        a)    The Variety of Signatures Issue.

Based upon his claim that the signature of Andrew Harmon varies from document to document, Defendant states that he "has a good faith basis to assert that Andrew Harmon did not sign the assignment." Statement of Disputed Facts, No. 10, p. 3.[8]

The mere fact that Andrew Harmon's signature may vary from document to document, documents which are signed before a notary public in this instance, fails to rise to the level of competence evidence creating a trial worthy issue. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

---

[8] In making this assertion, Defendant references Exhibit N. However, there is no Exhibit N to the Statement of Disputed Facts. There is, however, an Exhibit E which contains four (4) different assignments executed by Andrew Harmon.

3

"To oppose the [summary-judgment] motion successfully, the nonmoving party . . . . must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." *Serrano-Cruz v. DFI P.R., Inc*., 109 F.3d 23, 25 (1st Cir. 1997). In this context, four (4) documents in isolation hardly seem to be "enough competent evidence" to create a "trial worthy" argument that ultimately sounds in forgery.

        b)        The Mortgage Purchase and Sales Agreement Issue.

Defendant further argues in relation to a Mortgage Purchase and Sales Agreement purportedly attached to his Statement of Disputed Facts as Exhibit D. Statement of Disputed Facts, No. 10, p. 4. However, no such document is attached to Exhibit D.[9]

Moreover, "Rhode Island is a title-theory state, in which 'a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt.' *140 Reservoir Avenue Associates v. Sepe Investments, LLC*, 941 A.2d 805, 811 (R.I. 2007) (quoting *In re D'Ellena*, 640 A.2d 530, 533 (R.I. 1994))." *Bucci v. Lehman Bros. Bank*, 68 A.3d 1069, 1078 (R.I. 2013).

Thus, whatever might have been the "contractual" path for the transfer of the Note and Mortgage pursuant to the Mortgage Purchase Agreement, the "title" path is what controls. See e.g., *In re Samuels*, 415 B.R. 8, 22 (Bankr. D. Mass. 2009):

"[T]he Debtor argues that the PSA required that all mortgages acquired thereunder to be funneled to Deutsche Bank, as pool trustee, through the entity designated by the PSA as 'depositor,' ARSI. A failure to follow this protocol--such as by direct assignment of the mortgage from the loan originator to the pool trustee, bypassing the depositor--would, the Debtor contends, constitute a breach of the PSA, a breach of fiduciary obligations under the PSA to investors, a

---

[9] The Affidavit of Christina Mercurio (Document 23-1) identifies this document as being attached as Exhibit C. However, when Exhibit C is downloaded from PACER, it is a duplicate of Exhibit D.

breach of federal regulations, and an act giving rise to unfavorable tax consequences for the investors. The Debtor argues that because the Confirmatory Assignment is a direct assignment from Argent to Deutsche Bank that bypasses the depositor, it must be invalid. ***This argument falls far short of its goal***. Even if this direct assignment were somehow violative of the PSA, giving rise to unfavorable tax, regulatory, contractual, and tort consequences, [fn. 12] neither the PSA nor those consequences would render the assignment itself invalid.

"Fn. 12. The Court does not conclude that the Confirmatory Assignment violates the PSA or gives rise to unfavorable tax, regulatory, contractual, or tort consequences; ***the debtor's argument is so lacking in detail on all these points as to constitute no real argument at all, certainly none permitting the conclusions she urges on the Court***."

Bold and italic added for emphasis.

    c)    The Partially Dated Assignment Issue.

Defendant then argues that the "assignment was not dated, but had a purported time frame of April 2007. Likewise, the document was not notarized with a particular date, other than April 2007." *Id*.

While the assignment admittedly does not state the exact date it was executed in April of 2007, it was nonetheless "Received for Record" by the Town Clerk for the Town of Barrington on May 1, 2007, and duly recorded in Book 1035, Page 323.

    d)    The Assignment of the Note Issue.

Defendant further argues that the "assignment purports to convey the note along with the mortgage. However, MERS had no interest in the note and could not covey the note as it had no interest in the note at any time." Statement of Disputed Facts, No. 10, p. 4.

In the first place, "[a]lthough the Assignment contains language purporting to assign both the Note and Mortgage, MERS lacked an assignable interest in the Note. While this surplusage evidences poor drafting, it does not affect the validity of MERS's assignment of the Mortgage." *In re Lopez*, 446 B.R. 12, 19 (Bankr. D. Mass. 2011).

Secondly, under Rhode Island law, the assignment of the Mortgage operates as an assignment/transfer of the Note as well. See R.I. Gen. Laws § 34-11-24 quoted above.

e) The Authenticity of the Assignment Issue.

Finally, Defendant contends that the assignment is not self-authenticating under Federal Rules of Evidence 1005. Statement of Disputed Facts, No. 10, p. 4. He's right. The certified copy of the assignment is not self-authenticating under Federal Rules of Evidence 1005. Rather, <u>it is self-authenticating under Federal Rules of Evidence 902(4)</u>. And, as a self-authenticating document, it is <u>admissible</u> under Federal Rules of Evidence 1005.[10]

f) BNY Mellon Holds the Mortgage Via an Alternate Assignment.

<u>Alternatively</u>, if the Court determines that the 2007 assignment is invalid and fails to convey title to the Mortgage, then BNY Mellon would rely upon an assignment from Mortgage Electronic Registration Systems, Inc., to BNY Mellon executed on March 13, 2014, and recorded with the Town of Barrington Land Evidence Records on March 17, 2014, in Book 1396, Page 236. A certified copy of said assignment is attached hereto as Exhibit 1.[11]

---

[10] Defendant's further argument that "[t]he only authentication would be whether this document was recorded with the Land Evidence Records of the Town of Barrington" (Statement of Disputed Facts, No. 10, p. 4) is nonsensical because the document reveals on its face that it was so recorded and because the Town Clerk certified that it was so recorded when the Clerk provided BNY Mellon with a "certified" copy thereof for filing with this instant Complaint. BNY Mellon's Counsel is in possession of the original "certified" copy and will produce the same at the hearing of this motion.

[11] BNY Mellon's Counsel has BOTH the original recorded assignment of mortgage as well as the original certified copy thereof, a scanned copy of which is attached hereto as Exhibit 1, and will produce the same at the hearing of this motion. If the MERS assignment of 2007 is valid, then this assignment is outside of the chain of title and conveyed no interest since MERS had already assigned the Mortgage. Thus, BNY Mellon did not reference this assignment in

3. <u>Fact No. 12: The First Tennessee/First Horizon Assignment is Valid</u>.

Defendant disputes the validity of the second assignment of mortgage based upon his claim that the first assignment of mortgage was invalid thereby leaving that assignee with nothing to assign to BNY Mellon. Statement of Disputed Facts, No. 12, p. 4.

Obviously, if the first assignment is valid, this argument fails. Alternatively, if the first assignment is invalid, then this argument is correct, <u>BUT</u>, BNY Mellon would still hold the mortgage by virtue of the assignment attached hereto as Exhibit 1.

Defendant's argument about authentication is a replication of his argument made in relation to the first assignment of mortgage and fails for the same reasons set forth above. See fn. 9.

4. <u>Fact No. 15: The Mailing of the Notices of Default</u>.

a) The USPS Tracking Data Issue.

Defendants first line of attack on the notice of default is that when his legal assistant attempted to obtain the tracking for the certified mail numbers for the notices from the USPS website on August 2, 2018, the postal service indicated that "this label was created but was not yet available and that: It will be available when the shipper provides an update or the package is delivered to USPS." Statement of Disputed Facts, No. 15, pp. 4 - 6.

However, it must be remembered that the notice of default was mailed on <u>September 15, 2014</u>, nearly four years before these USPS tracking searches were run.

According to the United States Postal Service (USPS) Handbook PO-610, Signature Capture and Electronic Record Management: Manager's Guide to Standard Operating Procedures, effective as of November 2014 (See Exhibit 1 to the Affidavit of Walter H. Porr, Jr., Esq., filed concurrently herewith), on-line delivery records are retained in the USPS Product Tracking and

---

its Complaint. If, however, the Court determines that the 2007 assignment is invalid, then this assignment would be within the chain of title and would validly assign the Mortgage to BNY Mellon.

Reporting (PTR) database for 45 days after which they are archived in an off-line database from which the data can be retrieved "for the remainder of the retention period" (see Section 4-6.1.2, Handbook p. 28). In the case of certified mail, the PTR off-line database keeps electronic records for a period of two (2) years (see Section 4-6.1.1.c). Additionally, USPS tracking data is only retained for six (6) months (see Section 4-6.1.1.e).

Thus, an on-line search in 2018 would necessarily return no delivery records because that data was only retained on-line for 45 days in the first instance and would return no tracking results because that data was only retained for six (6) months. Moreover, delivery records could only be retrieved for two (2) years once archived.

Here it must be noted that Defendant has <u>not</u> submitted an affidavit stating that he did not receive one or more of these notices. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (party opposing summary judgment cannot rely on pleadings to show genuine issue of material fact). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

        b)        The First Class Versus Certified Mail Issue.

Defendant, in reliance upon the lack of USPS tracking data, attempts to make an issue out of whether or not the notice of default was in fact sent in accordance with paragraph 15 of the Mortgage. Statement of Disputed Facts, No. 15, pp. 6 - 7.

In the wake of BNY Mellon's response immediately above, this argument is mere sophistry. Defendant can hardly be heard to complain that the notice was sent by "certified mail"

instead of "first class" mail when certified mail is a surer and more likely way of guarantying that Defendant actually gets the notice to which he is entitled.

        c)         The Paragraph 22 Issue.

Defendant contends that the notice of default was insufficient because it (1) "did not state a certain specific date on which to cure. Instead it stated: Failure to pay $16,228.77 by 11/01/2014 (or if said date(s) falls on a Saturday, Sunday or legal holiday, then on the first business day thereafter)" and (2) did not define a "business day" and that Sunday is a "business day" in Rhode Island because businesses are open. Statement of Disputed Facts, No. 15, p. 7.

This argument flies in the face of common sense and reason. Even if the Court were to adopt the objective "least sophisticated debtor" standard from Fair Debt Collection Practices law (see e.g., *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 104 (1st. Cir. 2014) (This standard is "an objective one, which preserves an element of reasonableness."), even an unsophisticated mortgagor would understand that Sunday (a weekend day when government offices, banks, etc., are regularly closed) is not a "business day."

Moreover, the notice of default makes it clear on its face that Sunday is not treated as a "business day" since if it was, the notice of default would <u>not</u> have included Sunday in the list of days <u>not</u> to be counted as such in the first instance (i.e., the notice would simply say "if said date falls on a Saturday or legal holiday . . .").

Defendant also contends that the notice did not inform the Defendant that he "had a right to bring a court action at any time" but rather that it somehow limited that right to after acceleration. Statement of Disputed Facts, No. 15, p. 7.

With respect to this aspect of paragraph 22, the Mortgage states: "The notice shall further inform the Borrower of the right to reinstate after acceleration and ***the right to bring a court action***

*to assert the non-existence of a default or any other defense of Borrower to acceleration or sale*." Complaint, Exhibit 2.  Bold and italics added for emphasis.

The Notice of Default in this case states: "In the event of acceleration, you have *the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration or sale*."  Complaint, Exhibit 6.  Bold and italics added for emphasis.

Here, the language of the Notice of Default is in perfect harmony, contextually and linguistically, with the language employed in paragraph 22 of the Mortgage.

        d)        The Mortgagee Issue.

Defendant argues that the Notice of Default was sent when BNY Mellon "had no interest in the mortgage on that date [September 15, 2014]."   Statement of Disputed Facts, No. 15, p. 8.

Of course, at the same time, Defendant argues that the assignments of mortgage attached to the Complaint are void and if so, then the assignment of mortgage submitted herewith as Exhibit 1 dated March 3, 2014, and recorded on March 17, 2014, would be operative and BNY Mellon would have been the holder of record of the Mortgage at that time by virtue of that assignment.

Be that as it may, there is no dispute that the Defendant's Mortgage was securitized as part of the First Horizon Alternative Mortgage Securities Trust 2004-AA5.  See Affidavit of Christina Mercurio, Document No. 23-1, and Exhibit B thereto, Document No. 23-3.

In this regard, Defendant's Mortgage was a MERS Mortgage.  See Complaint, Exhibit 2. MERS Mortgages are explicitly and distinctly identified in the Pooling and Servicing Agreement for the securitized trust into which Defendant's mortgage loan was transferred. See the Pooling and Servicing Agreement (PSA), Document No. 23-3, page 18/135 (bottom right hand corner) (page 19 of 39 ECF) for the definitions of MERS; a MERS Mortgage Loan; the MERS System;

the MIN for a MERS Mortgage; and, a MOM Loan.  See also the Definition for "Mortgage Loan Schedule" and item (15) therein.  See PSA, Document No. 23-3, page 19/135 (bottom right hand corner) (page 20 of 39 ECF).

As such, MERS Mortgages are treated differently pursuant to the PSA in that they do not have to be assigned to the Trustee upon securitization.  See the PSA, Document No. 23-3, pages 34/135 – 36/135 (bottom right hand corner) (pages 35 to 37 of 39 ECF) (PSA, Section 2.1, Conveyance of Mortgage Loans. Subsections (b)(ii), (iii) and (v)(beginning after sub-section (F)). See also PSA, Document No. 23-4, page 39/135 (bottom right hand corner) (page 1 of 22 ECF) (PSA, Section 2.2, Acceptance by Trustee of the Mortgage Loans, bottom of paragraph after the page 38 page break).

Furthermore, the PSA identifies the original lender, First Horizon Home Loan Corporation, as the Master Servicer.  See PSA, Document No. 23-3, page 1/135 (bottom right hand corner) (page 2 of 39 ECF); pages 4/135 and 5/135 (bottom right hand corner) (pages 5 and 6 of 39 ECF); and, page 17/135 (bottom right hand corner) (page 18 of 39 ECF) (defining First Horizon Home Loan Corporation as the Master Servicer).

In this regard, First Horizon Home Loan Corporation represented and warranted that it was a member in good standing of MERS. See PSA, Document No. 23-6, page 104/135 (bottom right hand corner) (page 20 of 20 ECF) (PSA, Schedule II, subsection (5).

In light of the foregoing, First Horizon Home Loan Corporation, as the Master Servicer, was authorized "to effectuate foreclosure or other conversion of the ownership of the Mortgage Property securing any Mortgage Loan" and was:

> ***further is authorized and empowered by the Trustee, on behalf of the Certificateholders and the Trustee, in its own name*** or in the name of a Subservicer, when the Master Servicer or a Subservicer as the case may be, believes it appropriate in its best judgment to

11

> register any Mortgage Loan on the MERS(R) System, *or cause the removal from the registration of any Mortgage Loan on the MERS(R) System, to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of assignment* and other comparable instruments with respect to such assignment or re-recording of a Mortgage in the name of MERS, solely as nominee for the Trustee and its successors and assigns.

PSA, Document No. 23-4, page 49/135 (bottom right hand corner) (page 11 of 22 ECF) (PSA, Section 3.1, Master Servicer to Service Mortgage Loans, (iv) and following) (bold and italics added for emphasis).

Thus, the 2007 assignment and the September 15, 2014, Notice of Default, are not in conflict but fully compliant with the PSA since First Horizon Home Loan Corporation as Master Servicer could act in its own name on behalf of BNY Mellon and under these circumstances, BNY Mellon held a sufficient interest in the Mortgage that the Notice of Default was proper.

    e)   The Affidavit Issue.

Defendant asserts that the Affidavit of Christy Vieau (Document No. 16-5) is "merely a formulaic recitation of the hearsay rule, without providing any supporting facts or referencing any documents." Statement of Disputed Facts, No. 15, p. 8.

After identifying herself by name and her employment status with Nationstar, the Affiant further states that has "knowledge of the business records of Nationstar as they relate to the Mortgage which is the subject of this Affidavit." Affidavit, ¶ 2.

The Affiant further states that she has "personal knowledge of the facts set forth in this Affidavit based upon my review of Nationstar's business records maintained in connection with the Mortgage and the related Mortgage loan account whose repayment the Mortgage secures." Affidavit, ¶ 2.

Finally, the Affiant states that "[i]n the course of reviewing and executing this affidavit, I have consulted Nationstar's system of record and the documents uploaded to such system in connection with the foreclosure action referenced in the Complaint."  Affidavit, ¶ 2.

In this context, rather than controverting the statements of Ms. Vieau as set forth in her affidavit, Defendant chooses rather to raise an evidentiary objection on the basis of hearsay.

"His objections are without merit.  {Vieau} is a qualified affiant whose declaration[] sufficiently authenticate[s] the business records [s]he has provided.  See *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir. 1985) (citations omitted); see also *Schwartz v. CACH, LLC*, No. 13-12644-FDS, 2014 U.S. Dist. LEXIS 9655, 2014 WL 298107, at *2 n.2 (D. Mass. Jan. 27, 2014) (denying motion to strike affidavit and finding affiant "appear[ed] competent to testify about . . . business records and . . . record-keeping methods based on his asserted custodial responsibilities and personal knowledge")."  *Hays v. Jefferson Capital Sys., LLC*, (D. Mass. 2017) 2017 U.S. Dist. LEXIS 14749, *4.

5.     Fact No. 16: The Payment History is Valid.

Defendant "disputes that the amount of the payment history attached to the complaint is accurate" and addresses that dispute in his Memorandum of Law.  Statement of Disputed Facts, No. 16, p. 8.

However, Defendant's Memorandum of Law is silent on this issue and so it has been waived.  See Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to disregard' the state law argument that was not developed in Coons's brief").

  6. <u>Fact No, 17: The Acceleration Notice is Valid</u>.

   a) <u>The USPS Tracking Issue</u>.

Defendant "dispute[s] that an acceleration notice was sent *as required by the terms of the Mortgage*." Statement of Disputed Facts, No. 17, p. 9.

In the first place, the Mortgage does <u>not</u> require a notice of acceleration. So not sending a notice that is not required is a non-issue. Similarly, sending a notice that is not required in this context is also a non-issue.

In the second place, Defendants argument about the notices not being sent is premised upon the lack of tracking data from the USPS. Statement of Disputed Facts, No. 15, pp. 9 – 12. These notices were sent on April 1, 2016 (see Complaint, Exhibit 8), over two (2) before the attempt to locate tracking data on the USPS website was undertaken. For the same reasons as set forth in relation to the Notices of Default, no tracking data would be available at this late date.

And, as with the Notices of Default, Defendant has <u>not</u> submitted an affidavit stating that he did not receive one or more of these notices. See *Celotex Corp., supra v. Catrett*, 477 U.S. at 324 (party opposing summary judgment cannot rely on pleadings to show genuine issue of material fact).

Moreover, Defendant's criticism of the Affidavit of Susan Cody authenticating these notices and their mailing (Document No. 16-4) to the effect that it (1) "does not attach any documents relating to the mailing of any acceleration notices" and (2) does not state "the name of the person who deposited the letters in the mail" and disputing that affidavit "based on the records from the United States Postal Service" (Statement of Disputed Facts, No. 17, p. 16) are to no effect.

The Affidavit authenticated documents that were attached to the Complaint as Exhibit 8. The identity of the person who put them in the mail is irrelevant. And the lack of USPS tracking data has been explained above.

      b)      The Multiple Addresses Issue.

Defendant complains that some of the Notices of Acceleration were sent to addresses that he had not designated pursuant to paragraph 15 of the Mortgage. See Statement of Disputed Facts, No. 17, pp. 10 - 11 (the P.O. Box 750, Bristol, RI address); p. 11 (the P.O. Box 250, Bristol, RI address); and, p. 12 (the 193 Sowams Road, Barrington, RI address).

The fact that notice was sent to multiple addresses to make sure that it reached the Defendant in the first place should not be a ground for criticism, particularly when no such notice was required in the first instance. This complaint is particularly without merit when it is remembered that

      c)      The Korde & Associates Registration Issue.

Defendant asserts that Korde & Associates "was not registered to practice law in the State of Rhode Island until March 16, 2017." Statement of Disputed Facts, No. 17, p. 13. From this fact, Defendant leaps to a non-sequitur – that "[t]here is a good faith dispute of the assertion that Korde & Associates, P.C. was the agent of the Plaintiff." Statement of Disputed Facts, No. 17, p. 15.

How the lack of registration could affect the agency relationship between BNY Mellon and Korde & Associates is nowhere explained nor supported by any facts or law. Moreover, Defendant does not allege that Counsel for BNY Mellon are not authorized to practice law in Rhode Island.

The upshot of Defendant's argument with respect to this issue appears to be the contention that Korde & Associates was engaged in the unauthorized practice of law and thus its action, or

the action of its Rhode Island licensed attorneys, in sending a notice of acceleration on behalf of BNY Mellon creates a triable issue of fact. See Statement of Disputed Facts, No. 17, p. 15.

Since a Notice of Acceleration is not required as a prerequisite to foreclosure in the first instance, this issue is simply a red herring.

Moreover, as the Court observed in *Grilli v. Atl. East, Ltd*., Case No. P2-2009-7122 (consolidated) and P2-2009-7095 (consolidated), (McGuirl, J.) (Decision, Feb. 10, 2012) 2012 R.I. Super. LEXIS 24, *21-22:

"Even if the argument that Francis Spinella had engaged in the unauthorized practice of law had merit, ***the effect of this violation would not be to void Atlantic East's Application, but rather to subject Mr. Spinella to penalties***.  See Section 11-27-14; In re Ferrey, 774 A.2d 62 64-65 (R.I. 2001).  ***Thus, this Court finds no basis for overturning the decisions of SHAB on this issue***, and accordingly, the Appellants' arguments alleging fatal defects in the Application for a comprehensive permit must fail."  Emphasis added.

7.  Conclusion – The Material Facts Are Not in Dispute.

When all is said and done, as demonstrated above, the material facts are not in dispute and as such, there is no impediment to the entry of summary judgment on that basis.

**Argument**

**I.**

**BNY Mellon is Entitled to Declaratory Relief on Count I of the Complaint**

Defendant, without citation to any controlling authority, argues that in this diversity action, the Court cannot grant judgment under the Rhode Island Declaratory Judgment statute. Defendant's Memorandum of Law, p. 1.

However, state remedies such as declaratory judgment are available in diversity actions in federal court. *Titan Holdings Syndicate v. Keene*, 898 F.2d 265, 273 (1st Cir. 1990) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)).  See also *Traincroft, Inc. v. Ins. Co.*, Case No. 14-cv-10551-FSS (D. Mass.) (Saylor, J.) (Memorandum and Order on Defendant's Motion to Dismiss and Motion to Strike, Jun 23, 2014) 2014 WL 2865907, 2014 U.S. Dist. LEXIS 85170, *16-17, fn. 5:

> [M]atters of substantive law relating to the request for a declaratory judgment should be evaluated under state law. *See Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 772-75 (1st Cir. 1994)(construing the Massachusetts Declaratory Judgment Act and holding that 'a district court sitting in diversity when it awards prejudgment interest pursuant to a declaratory judgment action must apply the law of the state in which the court sits'). Also, many federal district court judges have seemingly applied the state declaratory judgment act and attendant case law. *See, e.g., LeBeau v. Town of Spencer*, 190 F. Supp. 2d 131, 137-38 (D. Mass. 2002); *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 30 (D. Mass. 2000); *Riverdale Enterprises, Inc. v. Shell Oil Co.*, 41 F. Supp. 2d 56, 63 (D. Mass. 1999); *State Mut. Life Assur. Co. of Am. v. Lumbermens Mut. Cas. Co.*, 874 F. Supp. 451, 452, 461 (D. Mass. 1995). ***In any event, for present purposes, the inquiry is essentially the same under the state and federal statutes***.

Bold and italics added for emphasis.

The long and the short of the matter is that the Court has jurisdiction to enter the requested declaratory relief under either the state statute, the federal statute, or both.

## II.

### BNY Mellon is Entitled to Declaratory Relief on Count II of the Complaint

Defendant advances essentially the same argument that he advanced with respect to Count I. See Defendant's Memorandum of Law, pp. 2 - 3.  As demonstrated above, the Court has jurisdiction to enter the requested declaratory relief under either the state statute, the federal statute, or both.

### III.

### BNY Mellon is the Holder of the Note and Mortgage

Defendant engages in a protracted and somewhat disjointed argument, the point of which appears to be that BNY Mellon does not hold either the Note, the Mortgage, or both. See Defendant's Memorandum of Law, pp. 3 – 8.

However, these issues have been dealt with in BNY Mellon's original moving papers and in its response to Defendants Statement of Disputed Facts set forth above. Nothing more need be said here.

### IV.

### Count III is Moot

BNY Mellon has indicated that it is dismissing this claim (Memorandum of Law, Document No. 16-1, p. 2, fn. 1). Defendant, however, takes the position that "Plaintiff cannot unilaterally dismiss the count without permission of the Court or consent of the Defendant. In any case, since the Plaintiff is not seeking relief, Summary Judgment must be denied." See Defendant's Memorandum of Law, p. 11.

Assuming the Court denies summary judgment on Count III, Plaintiff still nonetheless seeks its dismissal and sees no reason why the Court or the Defendant would object thereto.[12]

---

[12] Defendant's reference to R.I. Gen. Laws § 34-23-3 in relation to this Count (See Defendant's Memorandum of Law, pp. 8 – 9) appears to be a back-door effort to assert an affirmative defense that was not plead and was therefore waived. See Fed.R.Civ.P. 12(b) ("Every defense to a claim for relief in any pleadings *must be asserted* in the responsive pleading . . ."). Bold and italic added for emphasis. See also *Shervin v. Partners Healthcare Sys., Inc*., 804 F.3d 23, 52 (1st Cir. 2015) ("As a general matter, unpleaded affirmative defenses are deemed waived." (citation omitted)).

## V.

## BNY Mellon is Entitled to Relief on Count IV of the Complaint

Acknowledging that the Rhode Island judicial foreclosure "statute does not specify procedures that should be used" and does not "provid[] specific procedures" (See Defendant's Memorandum of Law, pp. 12 and 14), Defendant nonetheless erroneously asserts that BNY Mellon is requesting to conduct a non-judicial foreclosure and that its "proposed foreclosure procedures . . . are not sufficient to satisfy [the] 'usages in chancery and the principles of equity' as required by Rhode Island General Laws § 34-27-1" and that "the court should oversee all aspects of the process to ensure equity is done, ***not merely pass title to the mortgagor***."[13]  See Defendant's Memorandum of Law, pp. 11 and 14.

Instead, Defendant proposes that the Court erect an elaborate, time-consuming and costly procedure cobbled together from partition sales and mechanic's lien sales.  See Defendant's Memorandum of Law, pp. 14 - 15.

Why the use of the non-judicial procedures set forth in R.I. Gen. Laws § 34-27-4, et seq., would be insufficient is nowhere explained in Defendant's Memorandum of Law, particularly when BNY Mellon proposes to return to the Court to (1) report on its compliance with those provisions; (2) provide the Court with the outcome of the sale; and, (3) seek the Court's approval thereof, to which the Defendant may object if he has cause to do so.

In this way, the Court can "ensure that the entire sale process is completed in an equitable and commercially reasonable manner."  See Defendant's Memorandum of Law, p. 16.

---

[13] BNY Mellon is unaware of ANY aspect of the Complaint or the pleadings filed in conjunction therewith, including and especially the motion for summary judgment and supporting pleadings wherein BNY Mellon has asked the Court to "***merely pass title to the mortgagor***."

Wherefore, BNY Mellon is entitled to summary judgment as prayed.

Dated: August 28, 2018.

Respectfully Submitted,

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5,
By its Attorney,

/s/ Walter H. Porr, Jr., Esq.
Walter H. Porr, Jr., Esq., RI# 8967
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
(978) 256-1500 (ext. 263)
wporr@kordeassociates.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2018, the foregoing document was filed through the electronic filing system with electronic service completed on all parties registered therein to receive notice and that any non-registered attorneys or parties have been served in accordance with the Federal Rules of Civil Procedure.

This document is available for viewing and downloading from the United States District Court's Electronic Filing System.

/s/ Walter H. Porr, Jr, Esq.
Walter H. Porr, Jr, Esq., RI# 8967