## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**THE BANK OF NEW YORK MELLON
f/k/a THE BANK OF NEW YORK, AS
TRUSTEE FOR FIRST HORIZON
ALTERNATIVE MORTGAGE
SECURITIES TRUST 2004-AA5,**

      **Plaintiff**

**v.**                                **CASE No. 17-cv-00031-WES-PAS**

**CHRISTOPHER PEMENTAL,
BARRINGTON HISTORICAL
SOCIETY, LLC and all other unknown
successors, assigns or distributees of
BARRINGTON HISTORICAL
SOCIETY, LLC,**

      **Defendants**

_____/

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND COMPLAINT

      Plaintiff, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the First Horizon Alternative Mortgage Securities Trust 2004-AA5 ("BNY Mellon" or "Plaintiff"), hereby submits the following memorandum of law in support of its motion for leave to file an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) in the form attached hereto as <u>Exhibit A</u>.

### Introduction

      This action concerns a default in the terms of a Note and Mortgage executed by the Defendant Christopher Pemental ("Pemental") in relation to the property located at 66-68 County Road, Barrington, RI (the "Property"). The Complaint contains alternative prayers for relief, including a request for declaratory relief that the Rhode Island Mediation Statute, R.I. Gen. Laws

*The Bank of New York Mellon, as Trustee*
*v.*
*Pemental et al*
    Page **1** of **3**
*Memorandum of Law ISO*
*Motion to Amend Complaint*
*Docket # 17-CV-00031-WES-PAS*

§34-27-3.2 does not apply Pemental's Mortgage and additional counts seeking a judicial foreclosure.

Plaintiff mistakenly cited R.I. Gen. Laws § 9-30-1 as its source for relief for a declaratory judgment instead of the federal version of the declaratory judgment statute, 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 in Count I.   Although Count II of the Complaint does not specifically reference which declaratory judgment statute Plaintiff seeks relief under, Plaintiff seeks to amend the count for clarification and can only do so by amending the Complaint with leave of court.

### Argument

By its Amended Complaint, U.S. Bank repleads Count I for declaratory relief under the federal statutory reference, seeking a judgment that the so-called Mediation statute does not apply to Pemental's mortgage and clarifies Count II's statutory authority to be the federal declaratory judgment statute.

Fed.R.Civ.P. 15(a)(2) allows for the amendment of the Complaint with leave of Court before trial which "should freely give leave when justice so requires."

Leave to amend can only be denied for instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); see also *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990) ("Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters."). No scheduling order appears on the docket for this matter listing a date for amendments to be filed by. See also O'Leary v. New Hampshire Boring, Inc., 99 Fed. R. Serv.3d 1272 (D. Mass 2018).

*The Bank of New York Mellon, as Trustee*
*v.*
*Pemental et al*

Page **2** of **3**

*Memorandum of Law ISO*
*Motion to Amend Complaint*
*Docket # 17-CV-00031-WES-PAS*

Here, none of the exceptions to the rule of liberality in relation to the amendment of pleadings apply and thus, the motion to amend should be granted.


Dated:  January 12, 2021                    Respectfully Submitted,

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the First Horizon Alternative Mortgage Securities Trust 2004-AA5, By its Attorney,


/s/ Catherine V. Eastwood
Catherine V. Eastwood, Esq., RI# 6406
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
(978) 256-1500, ext. 26222
ceastwood@kordeassociates.com

*The Bank of New York Mellon, as Trustee*
*v.*                                  Page **3** of **3**
*Pemental et al*

*Memorandum of Law ISO*
*Motion to Amend Complaint*
*Docket # 17-CV-00031-WES-PAS*

# EXHIBIT

# A

## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**THE BANK OF NEW YORK MELLON
f/k/a THE BANK OF NEW YORK, AS
TRUSTEE FOR FIRST HORIZON
ALTERNATIVE MORTGAGE
SECURITIES TRUST 2004-AA5,**

      **Plaintiff**

**v.**                                                           **CASE No. 17-cv-00031-WES-PAS**

**CHRISTOPHER PEMENTAL,
BARRINGTON HISTORICAL
SOCIETY, LLC and all other unknown
successors, assigns or distributees of
BARRINGTON HISTORICAL
SOCIETY, LLC,**

      **Defendants**
_____/

### AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND
### OTHER RELIEF

I.

INTRODUCTION

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for First Horizon

Alternative Mortgage Securities Trust 2004-AA5, files this amended complaint for a judgment

pursuant to 28 U.S.C §2201 and Fed. R. Civ. P. 57, et seq., declaring, inter alia, that the provisions

of R.I. Gen. Laws § 34-27-3.2 and particularly but without limitation subsection (d) thereof do not

apply to the mortgage held by the Plaintiff and encumbering property owned by the Defendant,

Christopher Pemental, at 66 and 68 County Road, Barrington, Rhode Island because such property

was not Pemental's principal residence during the relevant default period or at any time thereafter.

In the alternative, Plaintiff seeks other relief as set forth herein.

## II.

## PARTIES

1.      Plaintiff, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 ("BNY-Mellon"), is a national bank chartered and organized under the laws of the United States of America with a principal place of business at One Wall Street, New York, NY 10286.

2.      Defendant, Christopher Pemental, is an individual who, upon information and belief, resides at 19 Stanley Avenue, Barrington, RI 02806.

3.      Defendant, Barrington Historical Society, LLC, is a defunct Rhode Island limited liability company with a principal office of PO Box 250, Barrington, RI 02806. Its registered agent is Milton S. Slepkow, Esq., 1481 Wampanoag Trail, East Providence, RI 02915.

4.      Defendants, all unknown successors, assigns or distributees of the now defunct Barrington Historical Society, LLC, have identities and whereabouts currently unknown to the Plaintiff.

## III.

## JURISDICTION AND VENUE

5.      The Court has original jurisdiction over this action involving PHH's right, title and interest in the subject property pursuant to 28 U.S.C. § 1332(a)(1) since there is complete diversity between the Plaintiff and the Defendants and the amount in controversy is more than $75,000.00 in that the outstanding balance due and owing on the mortgage which PHH now seeks to foreclose exceeds $398,000.00.

6.      Venue is proper under 28 U.S.C. § 1391(b)(2) since the real property that is the subject of this Amended Complaint is situated in Rhode Island.

2

IV.

FACTS

7.      The Defendant, Christopher Pemental ("Pemental") acquired title to the Property

known as 66 and 68 County Road, Barrington, Rhode Island (the "Property") by Executrix's Deed

dated February 20, 2001 and recorded with the Town of Barrington Land Evidence Records (the

LER) on April 10, 2001 in Book 516, Page 188. The foregoing deed was recorded again in Book

869, Page 80. Reference is further made to the Affidavit of James V. Paolino, Esq. recorded in

Book 869, Page 76.

8.      Pemental secured a mortgage loan from First Horizon Home Loan Corporation in

the amount of $350,000.00 on September 7, 2004 (the "Loan").

9.      This mortgage loan is evidenced by an Adjustable Rate Note in the original

principal amount of $350,000.00 dated September 7, 2004, given by Pemental to First Horizon

Home Loan Corporation (the "Note"). The Note contains a single indorsement in blank by First

Horizon Home Loan Corporation. BNY-Mellon is the owner and holder of the Note, and it or its

designated document custodian has physical possession of the Note.  A true and accurate copy of

the Note is attached hereto as Exhibit 1.

10.     The Note is secured by a mortgage given by Pemental to Mortgage Electronic

Registration Systems, Inc., acting solely as a nominee for First Horizon Home Loan Corporation,

encumbering the Property in the original principal amount of $350,000.00 dated September 7,

2004 and recorded with the LER on September 8, 2004 in Book 869, Page 84 (the "Mortgage").

A certified copy of the Mortgage is attached hereto as Exhibit 2[1].

---

[1] As pleadings are filed electronically, and therefore the exhibits referred to herein are copies of certified documents, the loan number has been redacted for the borrower's protection, however, undersigned counsel is prepared to produce the original certified documents for the Court's inspection upon request.

11.     Pemental executed a Quit Claim Deed in favor of the Defendant, Barrington Historical Society, LLC (the "Society"), dated January 3, 2006 and recorded with the LER on the same day in Book 957, Page 306.

12.     The Rhode Island Secretary of State revoked the Society's Certificate of Organization to do business in Rhode Island on August 19, 2008.

13.     Mortgage Electronic Registration Systems, Inc., assigned the Mortgage to First Horizon Home Loan Corporation by assignment recorded with the LER on May 1, 2007 in Book 1035, Page 323. A certified copy of said Assignment is attached hereto as Exhibit 3.

14.     On or about June 1, 2007, First Horizon Home Loan Corporation merged with and into First Tennessee Bank National Association. See copy of Agreement of Merger dated May 21, 2007 attached hereto as Exhibit 4.

15.     First Tennessee Bank, National Association, successor by merger to First Horizon Home Loan Corporation, by Nationstar Mortgage LLC, its attorney-in-fact, assigned the Mortgage to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5, by assignment dated March 3, 2016 and recorded with the LER on March 16, 2016 in Book 1477, Page 195. A certified copy of said Assignment is attached hereto as Exhibit 5.

16.     Under the terms of the Note and Mortgage, Pemental was obligated to make monthly principal and interest payments together with a monthly escrow payment as computed by the mortgagee sufficient to pay real estate taxes and hazard insurance premiums in connection with the Property through the October 1, 2034 maturity date of the Loan.

17.     Pemental has defaulted in his monthly payment obligations due under the Note and Mortgage and his mortgage account with Nationstar Mortgage LLC ("Nationstar"), as servicer of

the Loan for BNY-Mellon, is now due for the January 1, 2014 payment together with all subsequently accrued but unpaid installments.

18.     Pursuant to the terms of the Mortgage, Nationstar, as servicer of the Loan for BNY-Mellon, sent Pemental Notices of Default on or about September 15, 2014 at both the Property address and at 19 Stanley Avenue, Barrington, RI 02806 via certified mail. True and accurate copies of said Notices are attached hereto as Exhibit 6.

19.     The default set forth in the September 15, 2014 Notices of Default has not been cured. A true and accurate copy of the payment history maintained by Nationstar in connection with the subject mortgage loan is attached hereto as Exhibit 7.

20.     On April 1, 2016, BNY-Mellon, through its attorneys, Korde & Associates, P.C., sent Pemental Notices of Acceleration via first class and certified mail. True and accurate copies of said Notices are attached hereto as Exhibit 8.

COUNT I

FOR JUDGMENT DECLARING THAT THE MEDIATION
STATUTE DOES NOT APPLY TO THE MORTGAGE

21.     BNY-Mellon re-alleges and incorporates by reference herein the allegations contained in paragraphs 1-20 above.

22.     Upon information and belief, the Defendant, Christopher Pemental ("Pemental"), has maintained his principal residence at 19 Stanley Avenue, RI ("Stanley Avenue") and not at the Property address (66 and 68 County Road, Barrington, RI).

23.     Pemental failed to make the required monthly payment due under the Note and Mortgage on January 1, 2014 and on each successive month thereafter through the filing date of this amended complaint.

24.     At all times during the 120-day period immediately following January 1, 2014 (the "date of default"), Pemental was and still remains the sole record owner of the Property and maintained and continues to maintain his principal residence at Stanley Avenue.  The aforesaid 120-day period is hereinafter referred to as the "The Relevant Default Period".

25.     At all times during The Relevant Default Period and continuing to this day, Pemental's address on file with the Town of North Providence Assessor's office was and is Stanley Avenue.

26.     R.I. Gen. Laws §34-27-3.2 (the "Mediation Statute") applies to a "mortgage" which is "an individual consumer first-lien mortgage on any <u>owner-occupied</u>, one (1)- to four (4)- unit residential property <u>that serves as the mortgagor's primary residence</u> (<u>emphasis added</u>).  See R.I. Gen. Laws §34-27-3.2(c)(7).  In furtherance of the foregoing, §34-27-3.2(k) states that "[t]his section shall apply only to foreclosure of mortgages on owner-occupied, residential real property with no more than four (4) dwelling units that is the primary dwelling of the mortgagor and not to mortgages secured by other real property."

27.     BNY-Mellon seeks a declaratory judgment pursuant to 28 U.S.C §2201 and Fed. R. Civ. P. 57, et seq. that the Mediation Statute, and particularly the requirements set forth in subsection (d) thereof, including that the mortgagee mail a notice of mediation conference to the mortgagor prior to initiating foreclosure of the Mortgage pursuant to §34-27-4(b), do not apply to the Mortgage because the Defendant Pemental did not reside at the Property immediately before, during, or any time subsequent to The Relevant Default Period.

## COUNT II

### FOR JUDGMENT DECLARING THAT THE PLAINTIFF IS
### THE HOLDER OF THE NOTE AND MORTGAGE

28.     BNY-Mellon re-alleges and incorporates by reference herein the allegations contained in paragraphs 1-27 above.

29.     BNY-Mellon seeks a declaratory judgment pursuant to 28 U.S.C §2201 and Fed. R. Civ. P. 57 from this Court declaring that (a) The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5, is the holder of the Note and holder of the Mortgage and is the entity entitled to enforce the default remedies provided for in the Note and Mortgage, including exercise of the power of sale provided for therein (see paragraph 22 of the Mortgage) and (b) that the Defendant, Christopher Pemental, is in default of his obligations set forth in the Note and Mortgage.

### COUNT III

### FOR DECREE BARRING ALL RIGHTS OF REDEMPTION
### AND VESTING TITLE IN THE PLAINTIFF FREE OF ALL CLAIMS

30.     BNY-Mellon re-alleges and incorporates herein by reference the allegations contained in paragraphs 1-29 above.

31.     In the alternative to the relief sought in Count II hereof, BNY-Mellon seeks a decree of this Court pursuant to R.I. Gen. Laws § 34-27-1 (a) forever barring any rights of redemption which each of the Defendants may have under the terms of the Mortgage and (b) vesting title to the Property in favor of the Plaintiff, BNY-Mellon, free of any and all right, title, interest or claim of each of the Defendants to this action.

COUNT IV

FOR AN ORDER OF SALE

32.     BNY-Mellon re-alleges and incorporates by reference the allegations contained in paragraphs 1-31 above.

33.     In the alternative to the relief sought in Count III hereof, BNY-Mellon seeks an order of this Court pursuant to R.I. Gen. Laws §34-27-1 or otherwise authorizing and directing BNY-Mellon to sell the property at public sale or by such other means and subject to such terms and conditions and with notice to such persons as the Court should direct with such sale culminating in a deed or order vesting title in the successful purchaser free of all rights of redemption on the part of each of the Defendants and otherwise free of any and all other rights, title, interests or claims of each of the Defendants to this action. In relation thereto, BNY-Mellon further seeks an order allowing it to credit bid up to the amount of the total debt owed to it under the Note and Mortgage at any such public sale.

WHEREFORE, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 ("BNY-Mellon") requests that the Court:

(a)     Issue a judgment pursuant to 28 U.S.C §2201 and Fed. R. Civ. P. 57 declaring that the provisions of the R.I. Gen. Laws §34-27-3.2 (d) do not apply to the Mortgage and that BNY-Mellon may proceed to conduct a foreclosure sale of the Property in accordance with the requirements of §34-27-4(b) without having to send a notice of mediation conference to the Defendant, Pemental, because the Property was not Pemental's principal residence during The Relevant Default Period;

(b)        Issue a judgment pursuant to 28 U.S.C §2201 and Fed. R. Civ. P. 57 determining that the Plaintiff, BNY-Mellon, is the present holder of the Note and the present holder of the Mortgage and entitled to enforce the default remedies provided for therein;

(c)        In addition to the relief sought in subparagraph (a) hereof and in the alternative to the relief sought in subparagraph (b), issue a judgment forever barring each of the Defendant's exercise of any rights of redemption, if any, provided for in the Mortgage and/or by operation of law and vesting title to the Property in the Plaintiff, BNY-Mellon, free of any and all right, title, interest or claim of each of the Defendants or any other person or entity who records a lien or interest in the Property after Plaintiff records a Lis Pendens identifying the within action with the Barrington Land Evidence Records;

(d)        In addition to the relief sought in subparagraph (b) hereof and in the alternative to the relief sought in subparagraphs (c) hereof, issue an order  authorizing and directing the Plaintiff to sell the Property at public sale or by such other means as the Court should direct with such sale culminating in a deed or order vesting title in the successful purchaser free of all rights of redemption on the part of each of the Defendants and otherwise free of any and all other rights, title, interest, lien, mortgage or claim of each of the Defendants to this action and of any other person or entity who records a lien or interest in the Property after Plaintiff records a Lis Pendens identifying the within action with the Barrington Land Evidence Records except that if the public sale generates a surplus over and above the total debt owed to the plaintiff as of the date of such sale, the right, title, interest, lie, mortgage or claim of such junior interest holders shall extend and transfer to such surplus according to lien priorities established under applicable law;

(e)        In conjunction with the order of sale requested in the foregoing prayer for relief, provide in the judgment that the foreclosure sale referenced in the preceding paragraph and

Plaintiff's delivery of a foreclosure deed to the successful high bidder at such sale shall extinguish all right, title, interest, lien, mortgage or claim in or to the Property of each of the Defendants to this action and of any other person or entity who records a lien or interest in the Property after Plaintiff records a Lis Pendens identifying the within action with the Barrington Land Evidence Records except that if the public sale generates a surplus over and above the total debt owed to the Plaintiff as of the date of such sale, the right, title, interest, lien, mortgage or claim of such junior interest holders shall extend and transfer to such surplus according to lien priorities established under applicable law;

(f)     Authorize the Plaintiff to credit bid up to the amount of the total debt owed to it under the Note and Mortgage at any such public sale; and

(g)     Grant such other and further relief as the Court deems just and proper.

January 12, 2021                              Respectfully Submitted,

                                             The Bank of New York Mellon f/k/a The Bank of
                                             New York, as Trustee for First Horizon Alternative
                                             Mortgage Securities Trust 2004-AA5,
                                             By its Attorney,


                                             /s/ Catherine V. Eastwood
                                             Catherine V. Eastwood, Esq., RI# 6406
                                             Korde & Associates, P.C.
                                             900 Chelmsford Street, Suite 3102
                                             Lowell, MA 01851
                                             (978) 256-1500 (ext. 26222)
                                             ceastwood@kordeassociates.com

# EXHIBIT

# 1

(Page 2 of 37)

Loan Number ▮▮▮▮▮

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)--Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

<u>SEPTEMBER 7</u>, 2004       <u>PROVIDENCE</u>, <u>RHODE ISLAND</u>
                                 [City]             [State]

<u>66 AND 68 COUNTY ROAD, BARRINGTON, RHODE ISLAND  02806</u>
                           [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $350,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is FIRST HORIZON HOME LOAN CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on NOVEMBER 1, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on OCTOBER 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 146, MEMPHIS, TN 38101 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,859.38. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of OCTOBER, 2009, and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage points (2.25%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.375% or less than 2.250%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage point(s) (2.00%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 12.375%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)--
Single Family--Fannie Mae Uniform Instrument

Form 3520  1/01
(page 1 of 3)

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)–
Single Family–Fannie Mae Uniform Instrument

Form 3520  1/01
(page 2 of 3)

(Page 4 of 37)

Transfer of the Property or a Beneficial Interest In Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CHRISTOPHER PEMENTAL                    -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

WITNESS

[Sign Original Only]

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)--
Single Family--Fannie Mae Uniform Instrument

Form 3520  1/01
(page 3 of 3)

Pay to the order of

Without recourse
First Horizon Home Loan Corporation

by _____
Stacy Largent, Vice President

(Page 6 of 37)

**INTEREST-ONLY ADDENDUM
TO ADJUSTABLE RATE PROMISSORY NOTE**

LOAN NUMBER: ___ █████ _____

PROPERTY ADDRESS: ___ 66 AND 68 COUNTY ROAD _____

_____ BARRINGTON, RHODE ISLAND 02806 _____

**THIS ADDENDUM** is made this __7TH__ day of ___SEPTEMBER_____, __2004____, and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to _FIRST HORIZON HOME LOAN CORPORATION _____ (the "Lender").

**THIS ADDENDUM** supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note.  None of the other provisions of the Note are changed by this Addendum.

**3.  PAYMENTS**

　　**(A) Time and Place of Payments**

　　　　I will pay interest by making payments every month for the first __120_ payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next ___240____ payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

　　　　I will make my monthly payments on the first day of each month beginning on _NOVEMBER 1, 2004_____.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If, on _OCTOBER 1, 2034_____, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

　　　　I will make my payments at _P.O. BOX 146, MEMPHIS, TN 38101_____
_____ ,
or at a different place if required by the Note Holder.

　　**(B) Amount of My Initial Monthly Payments**

　　　　Each of my initial monthly payments will be in the amount of U.S. $ __1,859.38_____.  This payment amount is based on the original principal balance of the Note.  This payment amount may change.

Form 603E                    Page 1 of 2                        03/03/03

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(C) Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE-QUARTER** percentage point(s) ( **2.25** %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

   During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00%** of my overdue payment of interest during the interest-only period, **5.00%** of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

Dated: **9/7/04**

Borrower CHRISTOPHER PEMENTAL

_____
Borrower

_____
Borrower

_____
Borrower

Form 603E                         Page 2 of 2                         03/03/03

(Page 8 of 37)

# ADDENDUM TO NOTE

This addendum is made **7TH** day of **SEPTEMBER, 2004** and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**66 AND 68 COUNTY ROAD, BARRINGTON, RHODE ISLAND 02806** (the "Property").

**AMENDED PROVISIONS**
In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **12.375%** or less than **2.250%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points **(2.00%)** from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **12.375%**. My interest rate will never be less than **2.250%**.

**UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

Witness _____      Date _9/7/04_

_____      _____ (Seal)
CHRISTOPHER PEMENTAL                        -Borrower

_____      _____ (Seal)
                                            -Borrower

_____      _____ (Seal)
                                            -Borrower

1201 LIBOR Addendum to Note                           1/01

# EXHIBIT

# 2

004117

Barrington, RI

Date: MAR 2 3 2006

A True Copy

Attest: _Meredith J. Salie_

Town Clerk

After Recording Return To:

FIRST HORIZON HOME LOAN CORPORATION
1555 W. WALNUT HILL LANE, SUITE 200
IRVING, TEXAS 75038
POST CLOSING MAIL CENTER 6708

———————————————— [Space Above This Line For Recording Data] ————————————————

Loan Number █████████
MERS Number 100085200502880919

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated SEPTEMBER 7, 2004, together with all Riders to this document.

(B) "Borrower" is CHRISTOPHER PEMENTAL. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is FIRST HORIZON HOME LOAN CORPORATION. Lender is a CORPORATION organized and existing under the laws of THE STATE OF KANSAS. Lender's address is 4000 HORIZON WAY, IRVING, TEXAS 75063.

(E) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 7, 2004. The Note states that Borrower owes Lender THREE HUNDRED FIFTY THOUSAND AND 00/100ths Dollars (U.S.$350,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 1, 2034.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | – INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER |
| | | – ADDENDUM TO ADJUSTABLE RATE RIDER |

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3040 1/01 (rev. 11/02) *(page 1 of 11 pages)*

**(I)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "Escrow Items" means those items that are described in Section 3.

**(M)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the ___TOWN___ of ___BARRINGTON___ : _____

     [Name of Recording Jurisdiction]                [Type of Recording Jurisdiction]

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES.**

which currently has the address of ___66 AND 68 COUNTY ROAD___

                                              [Street]

___BARRINGTON___ , Rhode Island ___02806___ ("Property Address"):

     [City]                        [Zip Code]

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3040 1/01 (rev. 11/02) *(page 2 of 11 pages)*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3040 1/01 (rev. 11/02) *(page 3 of 11 pages)*



Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3040 1/01 (rev. 11/02) *(page 4 of 11 pages)*



If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3040 1/01 (rev. 11/02) *(page 5 of 11 pages)*



**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3040 1/01 (rev. 11/02) *(page 6 of 11 pages)*



(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3040 1/01 (rev. 11/02) *(page 7 of 11 pages)*



**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3040 1/01 (rev. 11/02) *(page 8 of 11 pages)*

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

RHODE ISLAND–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3040 1/01 (rev. 11/02) *(page 9 of 11 pages)*



Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Outstanding Automatic Orders in Domestic Relations Cases. Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

25. Homestead Estate. If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3040 1/01 (rev. 11/02) *(page 10 of 11 pages)*



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
WITNESS: JULIE A. BRUNO, ESQUIRE                CHRISTOPHER PEMENTAL                     -Borrower

_____        _____ (Seal)
                                                                                        -Borrower

_____ (Seal)  _____ (Seal)
                                         -Borrower                                       -Borrower


State of RHODE ISLAND
County of PROVIDENCE
     In ___PROVIDENCE_____(city), in said County on the  7TH    day of  SEPTEMBER, 2004,      ,
before me personally appeared **CHRISTOPHER PEMENTAL** , each and all known to me to be the party/parties executing the
foregoing instrument, and he/she/they acknowledged said instrument by him/her/them executed to be his/her/their free act and
deed.


My Commission Expires:   3/11/06               Notary Public

_____               Typed or printed name: __JULIE A. BRUNO, NOTARY__


RHODE ISLAND—Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3040 1/01 (rev. 11/02) *(page 11 of 11 pages)*

BOOK 0869 PAGE 0004

**EXHIBIT "A"**

That certain tract or parcel of land with all buildings and improvements thereon, situated on the southerly side of County Road and the westerly side of Barton Avenue in the Town of Barrington, County of Bristol, State of Rhode Island, bounded and described as follows:

Beginning at a granite bound at the intersection of the southerly line of said County Road and the westerly line of Barton Avenue; thence running southerly bounded easterly by said Barton Avenue a distance of one hundred eighty-four and 12/100 (184.12) feet to a corner; thence turning an interior angle of 90 degrees 07 30" and running westerly bounded southerly by land now or lately of Donald W. Troppoli, et ux, a distance of ninety (90) feet to a corner; thence turning an interior angle of 86 degrees 25 30" and running northerly bounded westerly by land now or lately of John A. MacIntyre et ux a distance of seventy-two (72) feet to a granite bound; thence turning an interior angle of 183 degrees 03 20" and running northerly bounded westerly by said last named land a distance of one hundred fifteen and 43/100 (115.43) feet to a granite bound in the said southerly line of County Road; thence turning an interior angle of 88 degrees 23 10" and running easterly bounded northerly by said County Road a distance of eighty-five (85) feet to the granite bound at the point of beginning.

**PROPERTY ADDRESS:**

66 & 68 County Road
Barrington, Rhode Island  02806
A.P. 27, Lot 67



Book 0869 Page 0094A

## 1-4 FAMILY RIDER
### (Assignment of Rents)

Loan Number 

THIS 1-4 FAMILY RIDER is made this 7TH day of SEPTEMBER, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to FIRST HORIZON HOME LOAN CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

66 AND 68 COUNTY ROAD, BARRINGTON, RHODE ISLAND 02806
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. Section Deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3170  1/01 *(page 1 of 3 pages)*

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**
Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3170  1/01 *(page 2 of 3 pages)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
CHRISTOPHER PEMENTAL                                   Borrower

_____ (Seal)
                                                                   Borrower

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3170  1/01 *(page 3 of 3 pages)*

Loan Number ▊▊▊▊▊

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 7TH day of SEPTEMBER, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FIRST HORIZON HOME LOAN CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

66 AND 68 COUNTY ROAD, BARRINGTON, RHODE ISLAND 02806
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 6.375%. The Note provides for changes in the interest rate and the monthly payments, as follows:

#### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
##### (A) Change Dates
The interest rate I will pay may change on the first day of OCTOBER, 2009, and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

##### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

##### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage points (2.25%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Form 3138  1/01
Single Family--Fannie Mae Uniform Instrument                                                                *(page 1 of 3)*

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.375%** or less than **2.250%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points **(2.00%)** from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **12.375%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Form 3138  1/01
Single Family--Fannie Mae Uniform Instrument                                                                 *(page 2 of 3)*



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
CHRISTOPHER PEMENTAL                -Borrower

_____ (Seal)
                                    -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Form 3138  1/01
Single Family--Fannie Mae Uniform Instrument                                                      *(page 3 of 3)*

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER: _____ ▓▓▓▓▓ _____

PROPERTY ADDRESS:   66 AND 68 COUNTY ROAD, BARRINGTON, RHODE ISLAND 02806

THIS ADDENDUM is made this __7TH__ day of ___SEPTEMBER_____, ._2004___, and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to FIRST HORIZON HOME LOAN CORPORATION_____ (the "Lender").

THIS ADDENDUM supersedes Sections 4(C) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(C) Calculation of Changes**

       Before each Change Date, the Note Holder will calculate my new interest rate by adding __TWO AND ONE-QUARTER_____ percentage point(s) (__2.25___%) to the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

       During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Dated: __9/7/04_____          _____
                                       Borrower CHRISTOPHER PEMENTAL

                                       _____
                                       Borrower

                                       _____
                                       Borrower

Form 603F                    Page 1 of 1                          01/01

BOOK 0869 PAGE 0101

Loan Number ▮▮▮▮▮

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made **SEPTEMBER 7, 2004** and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**66 AND 68 COUNTY ROAD, BARRINGTON, RHODE ISLAND 02806**

**AMENDED PROVISIONS**
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **12.375%** or less than **2.250%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points **(2.00%)** from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **12.375%**. My interest rate will never be less than **2.250%**.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

1202 LIBOR Addendum to Rider            *(page 1 of 2 pages)*                    1/01

In Witness Thereof, Trustor has executed this addendum.

Witness JULIE A. BRUNO, ESQUIRE

Date   9/7/04

CHRISTOPHER PEMENTAL                         (Seal)
                                             -Borrower

Date                                         (Seal)
                                             -Borrower

Date                                         (Seal)
                                             -Borrower

Date                                         (Seal)
                                             -Borrower

1202 LIBOR Addendum to Rider          (page 2 of 2 pages)                1/01

**RECEIVED FOR RECORD**
Barrington, R.I.  SEP - 8 2004
at   11:35   o'clock  A   M

BOOK 0809 PAGE 0103

# EXHIBIT

# 3

Barrington, RI

Date: _____ MAR 2 3 2016

A True Copy *Meredith J. Delvié*

Attest: _____
            Town Clerk

## ASSIGNMENT OF MORTGAGE

Mortgage Electronic Registration Systems, Inc., 1595 Spring Hill Road, Suite 310, Vienna, VA 22102 holder of a mortgage from Christopher Pemental to Mortgage Electronic Registration Systems, Inc. dated September 7, 2004, and recorded with the Records of Land Evidence in the Town of Barrington on September 8, 2004 at 11:35 a.m. at Book 869, Page 84 assigns said mortgage and the note and claim secured thereby to First Horizon Home Loan Corporation, 4000 Horizon Way, Irving, TX 75063    INST:      1456  Bk: 1035 Pg:   323

Property Address:     66-68 County Road, Barrington, RI 02806

        IN WITNESS WHEREOF, the said Mortgage Electronic Registration Systems, Inc. has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by Thomas J. Walsh

this     day of April, 2007

                        Mortgage Electronic Registration Systems, Inc.

                        By: _____
                        Andrew S. Harmon, Vice President /Assistant Secretary*

*For signatory authority see Corporate Resolution recorded with the Records of Land Evidence in the Town of Barrington at Book1003, Page 155 on October 3, 2006 at 11:14 AM.

                The Commonwealth of Massachusetts

Middlesex, ss                                              April      , 2007

On this _____ day of April 2007,  before me, the undersigned notary public, personally appeared Andrew S. Harmon,  proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Capacity: (as Vice President /Assistant Secretary

for Mortgage Electronic Registration Systems, Inc.)

_____ (Affix Seal)
Notary Signature

My Commission Expires: 11/8/2013

                        RECEIVED FOR RECORD
                        May 01,2007 10:35:59A
                        Barrington, R.I.
                        LORRAINE A. DEROIS
                        TOWN CLERK

# EXHIBIT

# 4

NQ(s)
53-907-2

Filed
Date Filed: 07/24/2007
Business ID:
William M. Gardner
Secretary of State

AGREEMENT OF MERGER
BETWEEN
FIRST TENNESSEE BANK NATIONAL ASSOCIATION
AND
FIRST HORIZON HOME LOAN CORPORATION

Pursuant to T.C.A. § 48-21-101, *et seq.* of the Tennessee Business Corporation Act and K.S.A. § 17-6701, *et seq.* of the Kansas General Corporation Code, First Tennessee Bank National Association, a national banking association with its headquarters at 165 Madison Avenue, Memphis, Tennessee 38103 ("FTBNA"), and First Horizon Home Loan Corporation, a Kansas corporation with its main office at 4000 Horizon Way, Irving, Texas ("FHHLC"), hereby adopt the following Agreement of Merger for the purpose of merging FHHLC with and into FTBNA.

1.      The Agreement to Merge ("Merger Agreement") is set forth in **Exhibit A**, attached hereto and incorporated herein for all purposes into this Agreement of Merger, the same as if fully copied and set forth at length.

2.      As to FTBNA, a national banking association with its headquarters at 165 Madison Avenue, Memphis, Tennessee and the transactions contemplated thereby were submitted for a vote at a meeting duly held by its Board of Directors and duly adopted by a majority of its Board of Directors on January 16, 2007.

3.      As to First Horizon Home Loan Corporation, a Kansas corporation, the Merger Agreement and the transactions contemplated thereby were submitted for a vote at a meeting duly held by its Board of Directors and duly adopted by a majority of its Board of Directors on February 5, 2007.

4.      First Horizon National Corporation, a Tennessee corporation registered as a bank holding company, joined the Merger Agreement to evidence its approval for the acquisition of FHHLC and the approval of the sole shareholder of both institutions for the subsequent merger of FTBNA and FHHLC.

5.      FTBNA irrevocably appoints the Secretary of State of Kansas as its agent to accept services of process in any proceeding for enforcement of any obligation arising from this merger.  The Secretary of State shall mail any such process to FTBNA at 165 Madison Avenue, 8th Floor, Memphis, TN 38103.

6.      The merger will be effective at 11:45 p.m. EST/ 10:45 p.m. CST, on May 31, 2007.

Executed this 21st day of May, 2007.

FIRST TENNESSEE BANK, NATIONAL ASSOCIATION

By: *Milton A. Gutelius Jr.*
       Milton A. Gutelius, Jr.
       Senior Vice President & Corporate Treasurer

FIRST HORIZON HOME LOAN CORPORATION

By: *[signature]*
       Peter F. Makowiecki
       President

State of New Hampshire
Mergers - Corporations 4 Page(s)

T0720625015



**RON THORNBURGH**
Secretary of State

Memorial Hall, 1st Floor
120 S.W. 10th Avenue
Topeka, KS 66612-1594
(785) 296-4564

## STATE OF KANSAS

May 24, 2007

ANNETTE W. LECROIX
FIRST TENNESSEE BANK NATIONAL ASSOCIATIO
165 MADISON AVENUE, 8TH FLOOR
MEMPHIS  TENNESSEE   38103

RE: FIRST HORIZON HOME LOAN CORPORATION

ID #:  53-907-2

To the Corporation

A certified copy of a merger that was recently filed in the
Corporations Division of our office is enclosed.

Every corporation in Kansas is assigned an identification number.
Use of this number in any correspondence with our office will give
us immediate access to your file and enable us to offer you faster,
more efficient service.  Your identification number is at the top
of this letter.

ch

# VALIDATION COVER PAGE

| 05-24-2007 | 11:44:00 |
|---|---|
| 0120    01 | $35.00 |
| 053    007   AA | 1 |
| FILE#: 0539072 | FILED BY KS SOS |

01849114

# MERGER NOTICE

First Horizon Home Loan Corporation, a Kansas corporation having its principal place of business at 4000 Horizon Way, Irving, Texas, which also conducts business under the names First Horizon Home Loans and First Tennessee Home Loans ("First Horizon"), is currently a wholly-owned second tier operating subsidiary of First Tennessee Bank National Association ("FTBNA") and is regulated by the Office of the Comptroller of the Currency (the OCC") pursuant to 12 C.F.R. Part 5.34.

FTBNA has applied for and received permission from the OCC to merge First Horizon into FTBNA, effective with the close of business on May 31, 2007. This merger will not affect the manner in which First Horizon operates nor will it diminish its capacity to continue to serve its customers and community; simply stated, First Horizon will become a division of FTBNA and will no longer function as a separate and stand-alone operating subsidiary.

You are receiving this notice because you have a current relationship with First Horizon. As a result of the merger, FTBNA will become liable for all the current and past obligations of First Horizon and FTBNA will assume all the duties and responsibilities of First Horizon. Except for this change in its legal structure First Horizon, as a division of FTBNA, will continue to functionally operate exactly as it has in the past. Going forward, First Horizon will use the following legal names: "First Horizon Home Loans, a division of First Tennessee Bank National Association" and "First Tennessee Home Loans, a division of First Tennessee Bank National Association."

If you have an existing relationship with First Horizon, you can continue to work with the same First Horizon representative that you have worked with previously. Also, you can use the same contact information in the notice section of your existing contract and you can continue to remit payments or invoices to First Horizon in the same manner that you had been making them.

First Horizon requests that you acknowledge this Merger Notice and return a signed copy for our records. If you have questions please call the undersigned.

# EXHIBIT

# 5

INST: 595 Bk: 1477 Pg: 195

Barrington, RI

Date: MAR 2 3 2016

A True Copy

Attest: Meredith J. DeSisto

Town Clerk

## ASSIGNMENT OF MORTGAGE

Regarding this instrument, contact Nationstar Mortgage LLC, 8950 Cypress Waters Blvd., Coppell, TX, 75019, TELEPHONE # 888-480-2432, which is responsible for receiving payments.
FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FIRST TENNESSEE BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO FIRST HORIZON HOME LOAN CORPORATION, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents docs convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2004-AA5, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 09/07/2004, made by CHRISTOPHER PEMENTAL to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST HORIZON HOME LOAN CORPORATION, ITS SUCCESSORS AND ASSIGNS, and recorded in the Land Evidence Records in the Town of **BARRINGTON**, State of **Rhode Island**, in **Book 0869, Page 0084 and Instrument # 004117.**

Property is commonly known as: 66 AND 68 COUNTY ROAD, BARRINGTON, RI 02806.

IN WITNESS WHEREOF, **FIRST TENNESSEE BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO FIRST HORIZON HOME LOAN CORPORATION,** by NATIONSTAR MORTGAGE LLC, its Attorney-in-Fact has hereunto set its hand on ___3/ 3 /2016___ (MM/DD/YYYY).

By: _____
MOHAMED HAMEED
**ASST. SECRETARY**

Signed and delivered in the presence of:

_____
Valencia Metcalf                                                    Witness

STATE OF ___Texas___
COUNTY OF ___Dallas___
The foregoing instrument was acknowledged before me on ___03/ 03 /2016___ (MM/DD/YYYY), by ___MOHAMED HAMEED___ as ASST. SECRETARY of NATIONSTAR MORTGAGE LLC as Attorney-in-Fact for FIRST TENNESSEE BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO FIRST HORIZON HOME LOAN CORPORATION, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Colleen Barnett
Notary Public - State of ___Texas___
Commission expires:

NOV 3 0 2019

```
COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613
```

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

When Recorded Return To:
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

NSBAV 393765399 -- NSBAV   T2216024815; 0596836345-005   [PREP-1] FRMRI1



*D0015168865*

RECEIVED FOR RECORD
Mar 16,2016 09:17A
Barrington, R.I.
Meredith J. DeSisto
TOWN CLERK

# EXHIBIT

# 6

Copy



09/15/2014

Sent Via Certified Mail<br/>9314 7100 1170 0764 0696 22

CHRISTOPHER PEMENTAL
66 AND 68 COUNTY ROAD
BARRINGTON, RI 02806

Loan Number:            ██████████
Property Address:       66 AND 68 COUNTY ROAD
                        BARRINGTON, RI 02806

Dear CHRISTOPHER PEMENTAL:

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT NATIONSTAR MORTGAGE LLC ("NATIONSTAR") IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY TO THE EXTENT THAT IT IS INCLUDED IN YOUR BANKRUPTCY OR HAS BEEN DISCHARGED, BUT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.**

If you are represented by an attorney, please send this notice to your attorney.

Nationstar is the mortgage loan servicer for "The Bank of New York, Mellon, as Trustee for FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2004-AA5".

This notice is being sent as required by the terms of the security instrument securing your mortgage loan.

You have not made payments on your loan since 01/01/2014. You are now due for all payments from and including that date. The failure to make these payments is a default under the terms and conditions of the mortgage loan.

As of the date of this letter, total monthly payments (including principal, interest, and escrow, if applicable), late fees, NSF fees, and other fees and advances due under the terms of the loan documents are past due in the amount of **$16,228.77.** In order to cure this default, you must pay the total amount due of **$16,228.77** in addition to other amounts that become due from the date of this letter through the date you pay.

On the day that you intend to pay, please call Nationstar at 1-888-480-2432 to request the full amount owed on your account as the amount due on the day that you pay may be greater than stated above, due to interest, late charges, and other charges or credits that may vary from day to day, or may be assessed after the date of this letter. Any advances made by Nationstar subsequent to the date of this letter to protect the lien position and property must be added to the total amount necessary to cure the default. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current delinquency.

██

Copy

All reinstatement payments must be made payable in **certified funds, cashier's check or money order(s)** and mailed to **Nationstar Mortgage LLC, 350 Highland Drive, Lewisville, TX 75067-4177**. You may call Nationstar at 1-888-480-2432 if you have questions regarding your account or write to Nationstar Mortgage LLC, 350 Highland Drive, Lewisville, TX 75067-4177.

Unless otherwise required by applicable law, Nationstar is not obligated to accept less than the full amount owed. If you send less than the full amount owed, Nationstar may, in its sole discretion, apply such partial payment without waiving any default or waiving the right to accelerate the mortgage and pursue foreclosure.

**$16,228.77** must be paid by **11/01/2014** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter) in order to cure the default.

Your right to cure this default as referenced herein does not suspend your payment obligations. Pursuant to the terms of the Note, the next payment due on 10/01/2014 is still due on 10/01/2014 (or if said date(s) falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter).

Failure to pay **$16,228.77** by **11/01/2014** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter), may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property.

In the event of acceleration, you have the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

This default, and any legal action that may occur as a result, may be reported to one or more local and national credit reporting agencies by Nationstar.

If you request in writing, Nationstar will not contact you by phone at your place of employment. Furthermore, if you request in writing not to be contacted, Nationstar will not contact you, except to send statutorily and/or contractually required legal notice(s).

You may have options available to you to help you avoid foreclosure. Please call Nationstar's Foreclosure Prevention Department at 1-888-480-2432 or visit www.nationstarmtg.com/PaymentAssistance for additional information and to see what options may be available to you.

All homeowners are eligible for housing counseling services through the U.S. Department of Housing and Urban Development (HUD). To obtain a list of HUD approved counseling agencies, call 1-888-995-HOPE (4673) or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**Attention Servicemembers and Dependents**: Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure without a court order. If you are currently in the military service, or have been within the last 12 months, AND joined after signing the Note and Security Instrument now in default, please notify Nationstar immediately. When contacting Nationstar as to your military service, you may be required to provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil or 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified counseling agencies (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also call Nationstar toll-free at 1-888-480-2432 if you have questions about your rights under SCRA.

(Page 5 of 6)

Copy

Please disregard this notice if a payment sufficient to cure the default has already been sent.

Sincerely,

Charlotte Henry
Dedicated Loan Specialist
Nationstar Mortgage LLC
1-877-782-7612 ext. 4670687
350 Highland Drive
Lewisville, TX 75067-4177

RI_NOI
Page 3 of 3

9314 7100 1170 0764 0696 22

Copy



09/15/2014

Sent Via Certified Mail
9314 7100 1170 0764 0696 15

CHRISTOPHER PEMENTAL
19 STANLEY AVE
BARRINGTON, RI 02806-4212

Loan Number:            ████████
Property Address:       66 AND 68 COUNTY ROAD
                        BARRINGTON, RI 02806

Dear CHRISTOPHER PEMENTAL:

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT NATIONSTAR MORTGAGE LLC ("NATIONSTAR") IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY TO THE EXTENT THAT IT IS INCLUDED IN YOUR BANKRUPTCY OR HAS BEEN DISCHARGED, BUT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.**

If you are represented by an attorney, please send this notice to your attorney.

Nationstar is the mortgage loan servicer for "The Bank of New York, Mellon, as Trustee for FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2004-AA5".

This notice is being sent as required by the terms of the security instrument securing your mortgage loan.

You have not made payments on your loan since 01/01/2014. You are now due for all payments from and including that date. The failure to make these payments is a default under the terms and conditions of the mortgage loan.

As of the date of this letter, total monthly payments (including principal, interest, and escrow, if applicable), late fees, NSF fees, and other fees and advances due under the terms of the loan documents are past due in the amount of **$16,228.77**. In order to cure this default, you must pay the total amount due of **$16,228.77** in addition to other amounts that become due from the date of this letter through the date you pay.

On the day that you intend to pay, please call Nationstar at 1-888-480-2432 to request the full amount owed on your account as the amount due on the day that you pay may be greater than stated above, due to interest, late charges, and other charges or credits that may vary from day to day, or may be assessed after the date of this letter. Any advances made by Nationstar subsequent to the date of this letter to protect the lien position and property must be added to the total amount necessary to cure the default. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current delinquency.

█

9314 7100 1170 0764 0696 15

Copy

All reinstatement payments must be made payable in **certified funds, cashier's check or money order(s)** and mailed to **Nationstar Mortgage LLC, 350 Highland Drive, Lewisville, TX 75067-4177**. You may call Nationstar at 1-888-480-2432 if you have questions regarding your account or write to Nationstar Mortgage LLC, 350 Highland Drive, Lewisville, TX 75067-4177.

Unless otherwise required by applicable law, Nationstar is not obligated to accept less than the full amount owed. If you send less than the full amount owed, Nationstar may, in its sole discretion, apply such partial payment without waiving any default or waiving the right to accelerate the mortgage and pursue foreclosure.

**$16,228.77** must be paid by **11/01/2014** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter) in order to cure the default.

Your right to cure this default as referenced herein does not suspend your payment obligations. Pursuant to the terms of the Note, the next payment due on 10/01/2014 is still due on 10/01/2014 (or if said date(s) falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter).

Failure to pay **$16,228.77** by **11/01/2014** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter), may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property.

In the event of acceleration, you have the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

This default, and any legal action that may occur as a result, may be reported to one or more local and national credit reporting agencies by Nationstar.

If you request in writing, Nationstar will not contact you by phone at your place of employment. Furthermore, if you request in writing not to be contacted, Nationstar will not contact you, except to send statutorily and/or contractually required legal notice(s).

You may have options available to you to help you avoid foreclosure. Please call Nationstar's Foreclosure Prevention Department at 1-888-480-2432 or visit www.nationstarmtg.com/PaymentAssistance for additional information and to see what options may be available to you.

All homeowners are eligible for housing counseling services through the U.S. Department of Housing and Urban Development (HUD). To obtain a list of HUD approved counseling agencies, call 1-888-995-HOPE (4673) or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**Attention Servicemembers and Dependents**: Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure without a court order. If you are currently in the military service, or have been within the last 12 months, **AND** joined after signing the Note and Security Instrument now in default, please notify Nationstar immediately. When contacting Nationstar as to your military service, you may be required to provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil or 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified counseling agencies (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also call Nationstar toll-free at 1-888-480-2432 if you have questions about your rights under SCRA.

Copy

Please disregard this notice if a payment sufficient to cure the default has already been sent.

Sincerely,

Charlotte Henry
Dedicated Loan Specialist
Nationstar Mortgage LLC
1-877-782-7612 ext. 4670687
350 Highland Drive
Lewisville, TX 75067-4177

RI_NOI
Page 3 of 3

9314 7100 1170 0764 0696 15

# EXHIBIT

# 7

```
SR497CR-01                          Nationstar Mortgage LLC                  1/24/17  7:41:53
HPUR1036                           DETAIL TRANSACTION HISTORY                JOB DT:  1/24/17
```

Processing Options Selected:

    1. ▮▮▮▮▮▮▮▮▮▮      Loan Number Range

    2. 000000 - 012417    Date Range

    3. B    Output Type

    4.    Select State

    5.    Escrow Group Code

    6.    Message Code

    7.    Investor

    8. 0000000    Pool

    9. Y    Select only loans with Transactions

  10. N    Include liquidated loans

```
SR497CR-02                          Nationstar Mortgage LLC                    1/24/17  7:41:53
HPUR1036                          DETAIL TRANSACTION HISTORY                   JOB DT:  1/24/17
                                                                              PAGE:       1
--------------------------------------------------------------------------------------------
LOAN#  ██████████  INV# FFV    POOL# 0000001          NEXT DUE 1/01/14  INTEREST RATE 2.625  PRIN.BAL  349,999.64
BORR1 CHRISTOPHER PEMENTAL      TYPE: 03-00 Conv/Unins                                       ESC.BAL        .00
BORR2 ADDL INFORMATION                               INT PD TO 12/01/13  P&I SHORT    .00    CORP AD   1,822.45-
PROP: 66 AND 68 COUNTY ROAD     MAIL: John B. Ennis Attorney At Law
                                      1200 Reservoir Avenue
      BARRINGTON RI 02806              Cranston    RI 02920
--------------------------------------------------------------------------------------------
```

| | | ---TRANSACTION---- | | NEXT | -AFTER TRANS.BALANCES- | | TOTAL | ----------------APPLIED------------------ | | | --- MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NBR | DATE | CODE | -----DESCRIPTION------ | DUE | PRINCIPAL | ESCROW | AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD |
| 222 | 12/30/16 | 6225 | MISC SUSP DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-25 |
| | | | PAYEE 63CYPRE #0005850135 DUE 12/28/16 | | | | | | | | |
| | | | S/F SC  REF# 0005850135 | | | | | | | | |
| 221 | 12/29/16 | 2625 | MISC ADJ | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-25 |
| | | | S/F AD  REF# 0000 | | | | | | | | |
| 220 | 12/23/16 | 1325 | PMT-MISC SUSP | 1/14 | 349999.64 | .00 | 15.00 | .00 | .00 | .00 | 15.00 25 |
| | | | S/F AD  REF# 0000 | | | | | | | | |
| 219 | 12/23/16 | 1325 | PMT-MISC SUSP | 1/14 | 349999.64 | .00 | 15.00 | .00 | .00 | .00 | 15.00 25 |
| | | | S/F AD  REF# 0000 | | | | | | | | |
| 218 | 12/05/16 | 6036 | TOWN TAX    DISBURSED | 1/14 | 349999.64 | .00 | 1657.20- | .00 | .00 | 1657.20- | .00 |
| | | | PAYEE 36RI008 #    DUE 12/30/16 | | | | | | | | |
| | | | S/F WR  REF# | | | | | | | | |
| 217 | 12/05/16 | 1936 | TOWN TAX    ADVANCE | 1/14 | 349999.64 | 1657.20 | 1657.20 | .00 | .00 | 1657.20 | .00 |
| | | | S/F WR  REF# | | | | | | | | |
| 216 | 11/08/16 | 6050 | HAZARD SFR   DISBURSED | 1/14 | 349999.64 | .00 | 3060.00- | .00 | .00 | 3060.00- | .00 |
| | | | PAYEE 5020029 #11082016IN DUE 10/19/16 | | | | | | | | |
| | | | S/F WR  REF# 11082016INS | | | | | | | | |
| 215 | 11/08/16 | 1950 | HAZARD SFR   ADVANCE | 1/14 | 349999.64 | 3060.00 | 3060.00 | .00 | .00 | 3060.00 | .00 |
| | | | S/F WR  REF# 11082016INS | | | | | | | | |
| 214 | 10/04/16 | 6051 | FLOOD SFR    DISBURSED | 1/14 | 349999.64 | .00 | 3256.00- | .00 | .00 | 3256.00- | .00 |
| | | | PAYEE 5100125 #10042016IN DUE 10/24/16 | | | | | | | | |
| | | | S/F WR  REF# 10042016INS | | | | | | | | |
| 213 | 10/04/16 | 1951 | FLOOD SFR    ADVANCE | 1/14 | 349999.64 | 3256.00 | 3256.00 | .00 | .00 | 3256.00 | .00 |
| | | | S/F WR  REF# 10042016INS | | | | | | | | |
| 212 | 10/03/16 | 2526 | CORP ADVANCE ADJUST | 1/14 | 349999.64 | .00 | 15.00 | .00 | .00 | .00 | 15.00 26 |
| | | | S/F BT  REF# 0000 | | | | | | | | |
| 211 | 9/30/16 | 6226 | CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 |
| | | | PAYEE 63SSFSL #0001502691 DUE 9/29/16 | | | | | | | | |
| | | | S/F SC  REF# 0001502691 | | | | | | | | |
| 210 | 9/08/16 | 6036 | TOWN TAX    DISBURSED | 1/14 | 349999.64 | .00 | 1657.22- | .00 | .00 | 1657.22- | .00 |
| | | | PAYEE 36RI008 #0005446018 DUE 9/30/16 | | | | | | | | |
| | | | S/F SC  REF# 0005446018 | | | | | | | | |
| 209 | 9/08/16 | 1936 | TOWN TAX    ADVANCE | 1/14 | 349999.64 | 1657.22 | 1657.22 | .00 | .00 | 1657.22 | .00 |
| | | | S/F SC  REF# 0005446018 | | | | | | | | |
| 208 | 9/01/16 | 6226 | CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 |
| | | | PAYEE 63SSFSL #0001498504 DUE 8/31/16 | | | | | | | | |
| | | | S/F SC  REF# 0001498504 | | | | | | | | |
| 207 | 8/08/16 | 6226 | CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 |
| | | | PAYEE 63SSFSL #0001494350 DUE 8/05/16 | | | | | | | | |
| | | | S/F SC  REF# 0001494350 | | | | | | | | |
| 206 | 8/04/16 | 6226 | CORP ADV DISB | 1/14 | 349999.64 | .00 | 175.00- | .00 | .00 | .00 | 175.00-26 |
| | | | PAYEE 62SSSEV #0001493886 DUE 8/03/16 | | | | | | | | |
| | | | S/F SC  REF# 0001493886 | | | | | | | | |
| 205 | 7/13/16 | 6226 | CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 |

```
SR497CR-02                        Nationstar Mortgage LLC                      1/24/17  7:41:53
HPUR1036                        DETAIL TRANSACTION HISTORY                   JOB DT:   1/24/17
                                                                                      PAGE:     2
---TRANSACTION----          NEXT -AFTER TRANS.BALANCES-   TOTAL  ---------------APPLIED-----------------  MISC.PMTS
NBR  DATE    CODE -----DESCRIPTION------   DUE  PRINCIPAL   ESCROW   AMOUNT  PRINCIPAL INTEREST   ESCROW SUSPENSE/CD

LOAN#  ██████████        CONTINUED
              PAYEE 63SSFSL #0001490089 DUE  7/12/16
              S/F SC  REF# 0001490089
204  6/16/16 6226 CORP ADV DISB       1/14 349999.64      .00     15.00-      .00      .00      .00    15.00-26
              PAYEE 63SSFSL #0001485181 DUE  6/15/16
              S/F SC  REF# 0001485181
203  6/08/16 6036 TOWN TAX    DISBURSED 1/14 349999.64    .00   1523.57-      .00      .00  1523.57-     .00
              PAYEE 36RI008 #0005216283 DUE  6/30/16
              S/F SC  REF# 0005216283
202  6/08/16 1936 TOWN TAX    ADVANCE  1/14 349999.64  1523.57  1523.57       .00      .00  1523.57      .00
              S/F SC  REF# 0005216283
201  5/26/16 2526 CORP ADVANCE ADJUST  1/14 349999.64     .00     15.00       .00      .00      .00    15.00 26
              S/F BT  REF# 0000
200  5/25/16 6226 CORP ADV DISB        1/14 349999.64     .00     15.00-      .00      .00      .00    15.00-26
              PAYEE 63SSFSL #0001480643 DUE  5/24/16
              S/F SC  REF# 0001480643
199  5/03/16 6226 CORP ADV DISB        1/14 349999.64     .00     15.00-      .00      .00      .00    15.00-26
              PAYEE 63SSFSL #0001476588 DUE  5/02/16
              S/F SC  REF# 0001476588
198  4/21/16 6226 CORP ADV DISB        1/14 349999.64     .00    517.50-      .00      .00      .00   517.50-26
              PAYEE 61KORAS #0001473863 DUE  4/20/16
              S/F SC  REF# 0001473863
197  4/21/16 6226 CORP ADV DISB        1/14 349999.64     .00     33.65-      .00      .00      .00    33.65-26
              PAYEE 61KORAS #0001473863 DUE  4/20/16
              S/F SC  REF# 0001473863
196  4/21/16 6226 CORP ADV DISB        1/14 349999.64     .00      5.30-      .00      .00      .00     5.30-26
              PAYEE 61KORAS #0001473863 DUE  4/20/16
              S/F SC  REF# 0001473863
195  4/01/16 2526 CORP ADVANCE ADJUST  1/14 349999.64     .00     15.00       .00      .00      .00    15.00 26
              S/F BT  REF# 0000
194  3/31/16 6226 CORP ADV DISB        1/14 349999.64     .00     92.50-      .00      .00      .00    92.50-26
              PAYEE 61KORAS #0001469239 DUE  3/30/16
              S/F SC  REF# 0001469239
193  3/31/16 6226 CORP ADV DISB        1/14 349999.64     .00     51.00-      .00      .00      .00    51.00-26
              PAYEE 61KORAS #0001469239 DUE  3/30/16
              S/F SC  REF# 0001469239
192  3/31/16 6226 CORP ADV DISB        1/14 349999.64     .00      7.50-      .00      .00      .00     7.50-26
              PAYEE 61KORAS #0001469239 DUE  3/30/16
              S/F SC  REF# 0001469239
191  3/31/16 2526 CORP ADVANCE ADJUST  1/14 349999.64     .00     15.00       .00      .00      .00    15.00 26
              S/F BT  REF# 0000
190  3/30/16 6226 CORP ADV DISB        1/14 349999.64     .00     15.00-      .00      .00      .00    15.00-26
              PAYEE 63SSFSL #0001469118 DUE  3/29/16
              S/F SC  REF# 0001469118
189  3/07/16 6226 CORP ADV DISB        1/14 349999.64     .00     15.00-      .00      .00      .00    15.00-26
              PAYEE 63SSFSL #0001464451 DUE  3/04/16
              S/F SC  REF# 0001464451
188  3/04/16 6036 TOWN TAX    DISBURSED 1/14 349999.64    .00   1523.57-      .00      .00  1523.57-     .00
              PAYEE 36RI008 #0004888852 DUE  3/30/16
              S/F SC  REF# 0004888852
187  3/04/16 1936 TOWN TAX    ADVANCE  1/14 349999.64  1523.57  1523.57       .00      .00  1523.57      .00
              S/F SC  REF# 0004888852
```

```
SR497CR-02                          Nationstar Mortgage LLC                      1/24/17  7:41:53
HPUR1036                           DETAIL TRANSACTION HISTORY                    JOB DT:  1/24/17
                                                                                   PAGE:       3
    ---TRANSACTION----              NEXT -AFTER TRANS.BALANCES-    TOTAL  ---------------APPLIED----------------  MISC.PMTS
    NBR  DATE   CODE -----DESCRIPTION------  DUE  PRINCIPAL   ESCROW   AMOUNT  PRINCIPAL INTEREST  ESCROW SUSPENSE/CD

    LOAN#  ██████████        CONTINUED

    186  2/10/16 6226 CORP ADV DISB    1/14  349999.64     .00    15.00-     .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001459256 DUE  2/09/16
              S/F SC  REF# 0001459256
    185  1/15/16 6226 CORP ADV DISB    1/14  349999.64     .00    15.00-     .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001454470 DUE  1/14/16
              S/F SC  REF# 0001454470
    184 12/18/15 6226 CORP ADV DISB    1/14  349999.64     .00    15.00-     .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001449328 DUE 12/17/15
              S/F SC  REF# 0001449328
    183 12/17/15 6036 TOWN TAX    DISBURSED  1/14  349999.64     .00  1523.57-     .00      .00 1523.57-     .00
              PAYEE 36RI008 #0004516423 DUE 12/30/15
              S/F SC  REF# 0004516423
    182 12/17/15 1936 TOWN TAX    ADVANCE    1/14  349999.64 1523.57  1523.57     .00      .00 1523.57     .00
              S/F SC  REF# 0004516423
    181 11/19/15 6226 CORP ADV DISB    1/14  349999.64     .00    15.00-     .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001443321 DUE 11/18/15
              S/F SC  REF# 0001443321
    180 10/27/15 2526 CORP ADVANCE ADJUST    1/14  349999.64     .00    15.00     .00      .00      .00   15.00 26
              S/F BT  REF# 0000
    179 10/26/15 6226 CORP ADV DISB    1/14  349999.64     .00    15.00-     .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001431438 DUE 10/23/15
              S/F SC  REF# 0001431438
    178 10/07/15 6050 HAZARD SFR  DISBURSED  1/14  349999.64     .00  3010.00-     .00      .00 3010.00-     .00
              PAYEE 5020029 #10072015IN DUE 10/19/15
              S/F WR  REF# 10072015INS
    177 10/07/15 1950 HAZARD SFR  ADVANCE    1/14  349999.64 3010.00  3010.00     .00      .00 3010.00     .00
              S/F WR  REF# 10072015INS
    176 10/06/15 6051 FLOOD SFR   DISBURSED  1/14  349999.64     .00  3111.00-     .00      .00 3111.00-     .00
              PAYEE 5100125 #10062015IN DUE 10/24/15
              S/F WR  REF# 10062015INS
    175 10/06/15 1951 FLOOD SFR   ADVANCE    1/14  349999.64 3111.00  3111.00     .00      .00 3111.00     .00
              S/F WR  REF# 10062015INS
    174 10/05/15 6226 CORP ADV DISB    1/14  349999.64     .00    15.00-     .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001428478 DUE 10/02/15
              S/F SC  REF# 0001428478
    173  9/10/15 6036 TOWN TAX    DISBURSED  1/14  349999.64     .00  1523.57-     .00      .00 1523.57-     .00
              PAYEE 36RI008 #0004164036 DUE  9/30/15
              S/F SC  REF# 0004164036
    172  9/10/15 1936 TOWN TAX    ADVANCE    1/14  349999.64 1523.57  1523.57     .00      .00 1523.57     .00
              S/F SC  REF# 0004164036
    171  9/03/15 6226 CORP ADV DISB    1/14  349999.64     .00    15.00-     .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001422334 DUE  9/02/15
              S/F SC  REF# 0001422334
    170  8/24/15 6226 CORP ADV DISB    1/14  349999.64     .00    30.00-     .00      .00      .00   30.00-26
              PAYEE 63SSFSL #0001419450 DUE  8/21/15
              S/F SC  REF# 0001419450
    169  8/24/15 6226 CORP ADV DISB    1/14  349999.64     .00    60.00-     .00      .00      .00   60.00-26
              PAYEE 63SSFSL #0001419450 DUE  8/21/15
              S/F SC  REF# 0001419450
    168  8/24/15 6226 CORP ADV DISB    1/14  349999.64     .00    60.00-     .00      .00      .00   60.00-26
              PAYEE 63SSFSL #0001419450 DUE  8/21/15
```

```
SR497CR-02                         Nationstar Mortgage LLC                      1/24/17  7:41:53
HPUR1036                          DETAIL TRANSACTION HISTORY                    JOB DT:  1/24/17
                                                                                  PAGE:      4
---TRANSACTION----              NEXT -AFTER TRANS.BALANCES-    TOTAL ---------------APPLIED----------------- MISC.PMTS
NBR  DATE   CODE -----DESCRIPTION------  DUE  PRINCIPAL   ESCROW   AMOUNT   PRINCIPAL INTEREST  ESCROW SUSPENSE/CD

LOAN#                      CONTINUED

            S/F SC  REF# 0001419450
167 8/24/15 6226 CORP ADV DISB      1/14 349999.64     .00    105.00-     .00     .00     .00  105.00-26
            PAYEE 63SSFSL #0001419450 DUE 8/21/15
            S/F SC  REF# 0001416926
166 8/11/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001416926 DUE 8/10/15
            S/F SC  REF# 0001410345
165 7/14/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001410345 DUE 7/13/15
            S/F SC  REF# 0001410345
164 6/22/15 2526 CORP ADVANCE ADJUST 1/14 349999.64    .00     15.00      .00     .00     .00   15.00 26
            S/F BT  REF# 0000
163 6/19/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001405008 DUE 6/18/15
            S/F SC  REF# 0001405008
162 6/09/15 6036 TOWN TAX   DISBURSED 1/14 349999.64   .00   1364.37-     .00     .00 1364.37-     .00
            PAYEE 36RI008 #0003864229 DUE 6/30/15
            S/F SC  REF# 0003864229
161 6/09/15 1936 TOWN TAX    ADVANCE 1/14 349999.64 1364.37  1364.37     .00     .00 1364.37      .00
            S/F SC  REF# 0003864229
160 6/03/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001401595 DUE 6/02/15
            S/F SC  REF# 0001401595
159 5/04/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001394994 DUE 5/01/15
            S/F SC  REF# 0001394994
158 4/22/15 2526 CORP ADVANCE ADJUST 1/14 349999.64    .00     15.00      .00     .00     .00   15.00 26
            S/F BT  REF# 0000
157 4/21/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001391510 DUE 4/20/15
            S/F SC  REF# 0001391510
156 4/03/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001387649 DUE 4/02/15
            S/F SC  REF# 0001387649
155 3/23/15 2576 CORP ADV NOCASH ADJ 1/14 349999.64    .00     30.00      .00     .00     .00   30.00 26
            S/F AD  REF# 0000
154 3/19/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001383214 DUE 3/18/15
            S/F SC  REF# 0001383214
153 3/09/15 6036 TOWN TAX   DISBURSED 1/14 349999.64   .00   1364.37-     .00     .00 1364.37-     .00
            PAYEE 36RI008 #0003548588 DUE 3/30/15
            S/F SC  REF# 0003548588
152 3/09/15 1936 TOWN TAX    ADVANCE 1/14 349999.64 1364.37  1364.37     .00     .00 1364.37      .00
            S/F SC  REF# 0003548588
151 2/17/15 6226 CORP ADV DISB      1/14 349999.64     .00     15.00-     .00     .00     .00   15.00-26
            PAYEE 63SSFSL #0001374478 DUE 2/13/15
            S/F SC  REF# 0001374478
150 1/02/15 1919 RECOVER ESCROW ADVANCE 1/14 349999.64 .00      .11-      .00     .00     .11-     .00
     Effective date: 12/31/14
            S/F CK  REF#
149 1/02/15 10   PMT-INT ON ESCROW  1/14 349999.64    .11      .11       .00     .00     .11      .00
```

```
SR497CR-02                          Nationstar Mortgage LLC                    1/24/17  7:41:53
HPUR1036                          DETAIL TRANSACTION HISTORY                   JOB DT:  1/24/17
                                                                                PAGE:      5
---TRANSACTION----           NEXT -AFTER TRANS.BALANCES-    TOTAL  ----------------APPLIED---------------- MISC.PMTS
NBR   DATE   CODE -----DESCRIPTION------  DUE   PRINCIPAL    ESCROW   AMOUNT  PRINCIPAL INTEREST  ESCROW SUSPENSE/CD

LOAN# ██████████        CONTINUED

      Effective date: 12/31/14
              S/F CK  REF#
 148 12/30/14 6226 CORP ADV DISB       1/14  349999.64      .00    15.00-      .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001363079 DUE 12/29/14
              S/F SC  REF# 0001363079
 147 12/18/14 6226 CORP ADV DISB       1/14  349999.64      .00    15.00-      .00      .00      .00   15.00-26
              PAYEE 63SSFSL #0001360875 DUE 12/17/14
              S/F SC  REF# 0001360875
 146 12/08/14 6036 TOWN TAX   DISBURSED 1/14  349999.64     .00   1364.37-     .00      .00 1364.37-     .00
              PAYEE 36RI008 #0003241379 DUE 12/30/14
              S/F SC  REF# 0003241379
 145 12/08/14 1936 TOWN TAX    ADVANCE  1/14  349999.64  1364.37  1364.37      .00      .00 1364.37      .00
              S/F SC  REF# 0003241379
 144 11/24/14 6226 CORP ADV DISB       1/14  349999.64      .00   265.00-      .00      .00      .00  265.00-26
              PAYEE 62SSSEV #       DUE 11/20/14
              S/F WR  REF#
 143 11/04/14 6226 CORP ADV DISB       1/14  349999.64      .00    15.00-      .00      .00      .00   15.00-26
              PAYEE 63SSFSL #       DUE 11/04/14
              S/F WR  REF#
 142 10/17/14 6226 CORP ADV DISB       1/14  349999.64      .00    15.00-      .00      .00      .00   15.00-26
              PAYEE 63SSFSL #   DUE 10/17/14
              S/F WR  REF#
 141 10/17/14 6226 CORP ADV DISB       1/14  349999.64      .00    15.00-      .00      .00      .00   15.00-26
              PAYEE 63SSFSL #   DUE 10/16/14
              S/F WR  REF#
 140 10/16/14 1499 ZZZZF-Late Charges  1/14  349999.64      .00    38.28       .00      .00      .00      .00   38.28 01
              S/F       REF#
 139 10/10/14 6051 FLOOD SFR  DISBURSED 1/14  349999.64     .00   2510.00-     .00      .00 2510.00-     .00
              PAYEE 5100125 #10102014IN DUE 10/24/14
              S/F WR  REF# 10102014INS
 138 10/10/14 1951 FLOOD SFR   ADVANCE  1/14  349999.64  2510.00  2510.00      .00      .00 2510.00      .00
              S/F WR  REF# 10102014INS
 137 10/07/14 6050 HAZARD SFR DISBURSED 1/14  349999.64     .00   3010.00-     .00      .00 3010.00-     .00
              PAYEE 5020029 #10072014IN DUE 10/19/14
              S/F WR  REF# 10072014INS
 136 10/07/14 1950 HAZARD SFR  ADVANCE  1/14  349999.64  3010.00  3010.00      .00      .00 3010.00      .00
              S/F WR  REF# 10072014INS
 135 10/03/14 6226 CORP ADV DISB       1/14  349999.64      .00    15.00-      .00      .00      .00   15.00-26
              PAYEE 63SSFSL #       DUE  9/30/14
              S/F WR  REF#
 134  9/16/14 1499 ZZZZF-Late Charges  1/14  349999.64      .00    38.28       .00      .00      .00      .00   38.28 01
              S/F       REF#
 133  9/09/14 6036 TOWN TAX   DISBURSED 1/14  349999.64     .00   1364.37-     .00      .00 1364.37-     .00
              PAYEE 36RI008 #0002994361 DUE  9/30/14
              S/F SC  REF# 0002994361
 132  9/09/14 1936 TOWN TAX    ADVANCE  1/14  349999.64  1364.37  1364.37      .00      .00 1364.37      .00
              S/F SC  REF# 0002994361
 131  8/18/14 1499 ZZZZF-Late Charges  1/14  349999.64      .00    38.28       .00      .00      .00      .00   38.28 01
              S/F       REF#
 130  8/12/14 6226 CORP ADV DISB       1/14  349999.64      .00    15.00-      .00      .00      .00   15.00-26
              PAYEE 63SSFSL #       DUE  8/11/14
```

```
SR497CR-02                        Nationstar Mortgage LLC              1/24/17  7:41:53
HPUR1036                        DETAIL TRANSACTION HISTORY            JOB DT:   1/24/17
                                                                        PAGE:       6
```

| ---TRANSACTION---- NBR DATE CODE -----DESCRIPTION------ | NEXT DUE | -AFTER TRANS.BALANCES- PRINCIPAL | ESCROW | TOTAL AMOUNT | PRINCIPAL | ---APPLIED--- INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|
| LOAN# ▮▮▮▮▮▮         CONTINUED | | | | | | | | | |
| S/F WR REF# | | | | | | | | | |
| 129 7/24/14 6226 CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| PAYEE 63SSFSL # | DUE 7/23/14 | | | | | | | | |
| S/F REF# | | | | | | | | | |
| 128 7/16/14 1499 ZZZZF-Late Charges | 1/14 | 349999.64 | .00 | 38.28 | .00 | .00 | .00 | .00 | 38.28 01 |
| S/F WR REF# | | | | | | | | | |
| 127 6/18/14 6226 CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| PAYEE 63SSFSL # | DUE 6/12/14 | | | | | | | | |
| S/F REF# | | | | | | | | | |
| 126 6/16/14 1499 ZZZZF-Late Charges | 1/14 | 349999.64 | .00 | 38.28 | .00 | .00 | .00 | .00 | 38.28 01 |
| S/F | | | | | | | | | |
| 125 6/11/14 6036 TOWN TAX   DISBURSED | 1/14 | 349999.64 | .00 | 1351.84- | .00 | .00 | 1351.84- | .00 | |
| PAYEE 36RI008 #0002763095 | DUE 6/30/14 | | | | | | | | |
| S/F SC REF# 0002763095 | | | | | | | | | |
| 124 6/11/14 1936 TOWN TAX   ADVANCE | 1/14 | 349999.64 | 1351.84 | 1351.84 | .00 | .00 | 1351.84 | .00 | |
| S/F WR REF# | | | | | | | | | |
| 123 5/22/14 6226 CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| PAYEE 63SSFSL # | DUE 5/22/14 | | | | | | | | |
| S/F REF# | | | | | | | | | |
| 122 5/16/14 1499 ZZZZF-Late Charges | 1/14 | 349999.64 | .00 | 38.28 | .00 | .00 | .00 | .00 | 38.28 01 |
| S/F WR REF# | | | | | | | | | |
| 121 5/16/14 6226 CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| PAYEE 63SSFSL # | DUE 5/15/14 | | | | | | | | |
| S/F WR REF# | | | | | | | | | |
| 120 4/30/14 6226 CORP ADV DISB | 1/14 | 349999.64 | .00 | 15.00- | .00 | .00 | .00 | 15.00-26 | |
| PAYEE 63SSFSL # | DUE 4/30/14 | | | | | | | | |
| S/F WR REF# | | | | | | | | | |
| 119 4/16/14 1499 ZZZZF-Late Charges | 1/14 | 349999.64 | .00 | 38.28 | .00 | .00 | .00 | .00 | 38.28 01 |
| S/F REF# | | | | | | | | | |
| 118 3/17/14 1499 ZZZZF-Late Charges | 1/14 | 349999.64 | .00 | 38.28 | .00 | .00 | .00 | .00 | 38.28 01 |
| S/F REF# | | | | | | | | | |
| 117 3/11/14 6036 TOWN TAX   DISBURSED | 1/14 | 349999.64 | .00 | 1351.84- | .00 | .00 | 1351.84- | .00 | |
| PAYEE 36RI008 #0002494078 | DUE 3/30/14 | | | | | | | | |
| S/F SC REF# 0002494078 | | | | | | | | | |
| 116 3/11/14 1936 TOWN TAX   ADVANCE | 1/14 | 349999.64 | 1351.84 | 224.30 | .00 | .00 | 224.30 | .00 | |
| S/F REF# | | | | | | | | | |
| 115 2/18/14 1499 ZZZZF-Late Charges | 1/14 | 349999.64 | 1127.54 | 38.28 | .00 | .00 | .00 | .00 | 38.28 01 |
| S/F REF# | | | | | | | | | |
| 114 1/16/14 1499 ZZZZF-Late Charges | 1/14 | 349999.64 | 1127.54 | 38.28 | .00 | .00 | .00 | .00 | 38.28 01 |
| S/F TR REF# | | | | | | | | | |
| 113 1/16/14 2543 ESCROW ADJ | 1/14 | 349999.64 | 1127.54 | 1127.54 | .00 | .00 | 1127.54 | .00 | |
| S/F TR REF# | | | | | | | | | |
| 112 1/16/14 8199 NEW INV FFV/0000001 | 1/14 | 349999.64 | .00 | 349999.64- | 349999.64- | .00 | .00 | .00 | |
| S/F TR REF# | | | | | | | | | |
| 111 1/16/14 3199 OLD INV 784/0000001 | 1/14 | .00 | .00 | 349999.64 | 349999.64 | .00 | .00 | .00 | |
| S/F TR REF# | | | | | | | | | |
| 110 1/16/14 2643 ESCROW ADJ | 1/14 | 349999.64 | .00 | 1127.54- | .00 | .00 | 1127.54- | .00 | |
| S/F CK REF# I | | | | | | | | | |
| 109 1/02/14 10  PMT-INT ON ESCROW | 1/14 | 349999.64 | 1127.54 | 7.09 | .00 | .00 | 7.09 | .00 | |
| S/F | | | | | | | | | |
| 108 12/16/13 1408 ZZZZF-E PAY FEE | 1/14 | 349999.64 | 1120.45 | 9.95 | .00 | .00 | .00 | .00 | 9.95 08 |

```
SR497CR-02                          Nationstar Mortgage LLC                        1/24/17  7:41:53
HPUR1036                          DETAIL TRANSACTION HISTORY                      JOB DT:  1/24/17
                                                                                    PAGE:      7
```

| ---TRANSACTION---- | | | NEXT | -AFTER TRANS.BALANCES- | | TOTAL | ----------------APPLIED---------------- | | | | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NBR | DATE | CODE | -----DESCRIPTION------ | DUE | PRINCIPAL | ESCROW | AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | |

LOAN# ███████        CONTINUED

```
                    S/F C   REF#
107 12/16/13 1499 ZZZZF-E PAY FEE    1/14 349999.64 1120.45      9.95     .00     .00      .00      .00     9.95 08
                    S/F     REF#
106 12/16/13 02   PAYMENT            1/14 349999.64 1120.45  1759.17     .00  765.62   993.55      .00
                    Int pd to: 12/01/13
                    S/F SP  REF#
105 12/09/13 6036 TOWN TAX   DISBURSED 12/13 349999.64  126.90 1351.84-   .00     .00 1351.84-     .00
                    PAYEE 36RI008 #0002076944 DUE 12/30/13
                    S/F SC  REF# 0002076944
104 11/18/13 1408 ZZZZF-E PAY FEE   12/13 349999.64 1478.74     10.00     .00     .00      .00      .00    10.00 08
                    S/F C   REF#
103 11/18/13 1499 ZZZZF-E PAY FEE   12/13 349999.64 1478.74     10.00     .00     .00      .00      .00    10.00 08
                    S/F     REF#
102 11/18/13 02   PAYMENT           12/13 349999.64 1478.74  1759.17     .00  765.62   993.55      .00
                    Int pd to: 11/01/13
                    S/F SP  REF#
101 10/16/13 1408 ZZZZF-E PAY FEE   11/13 349999.64  485.19      9.95     .00     .00      .00      .00     9.95 08
                    S/F C   REF#
100 10/16/13 1499 ZZZZF-E PAY FEE   11/13 349999.64  485.19      9.95     .00     .00      .00      .00     9.95 08
                    S/F     REF#
 99 10/16/13 1919 RECOVER ESCROW ADVANCE 11/13 349999.64 485.19 508.36-  .00     .00  508.36-      .00
                    S/F IV  REF#
 98 10/16/13 02   PAYMENT           11/13 349999.64  993.55  1795.63     .00  802.08   993.55      .00
                    Int pd to: 10/01/13
                    S/F IV  REF#
 97 10/16/13 6050 HAZARD SFR   DISBURSED 10/13 349999.64   .00 2719.00-   .00     .00 2719.00-     .00
                    PAYEE 5020029 #10162013IN DUE 10/19/13
                    S/F WR  REF# 10162013INS
 96 10/16/13 1950 HAZARD SFR   ADVANCE 10/13 349999.64 2719.00 508.36     .00     .00   508.36      .00
                    S/F WR  REF# 10162013INS
 95 10/10/13 6051 FLOOD SFR   DISBURSED 10/13 349999.64 2210.64 2525.00-  .00     .00 2525.00-     .00
                    PAYEE 5100125 #10102013IN DUE 10/24/13
                    S/F WR  REF# 10102013INS
 94  9/16/13 1408 ZZZZF-E PAY FEE   10/13 349999.64 4735.64      9.95     .00     .00      .00      .00     9.95 08
                    S/F C   REF#
 93  9/16/13 1499 ZZZZF-E PAY FEE   10/13 349999.64 4735.64      9.95     .00     .00      .00      .00     9.95 08
                    S/F     REF#
 92  9/16/13 02   PAYMENT           10/13 349999.64 4735.64  1626.71     .00  802.08   824.63      .00
                    Int pd to: 9/01/13
                    S/F IV  REF#
 91  8/30/13 6036 TOWN TAX   DISBURSED 9/13 349999.64 3911.01 1351.84-    .00     .00 1351.84-     .00
                    PAYEE 36RI008 #0001747792 DUE 9/30/13
                    S/F SC  REF# 0001747792
 90  8/16/13 1408 ZZZZF-E PAY FEE    9/13 349999.64 5262.85      9.95     .00     .00      .00      .00     9.95 08
                    S/F C   REF#
 89  8/16/13 1499 ZZZZF-E PAY FEE    9/13 349999.64 5262.85      9.95     .00     .00      .00      .00     9.95 08
                    S/F     REF#
 88  8/16/13 02   PAYMENT            9/13 349999.64 5262.85  1626.71     .00  802.08   824.63      .00
                    Int pd to: 8/01/13
                    S/F IV  REF#
 87  7/16/13 1408 ZZZZF-E PAY FEE    8/13 349999.64 4438.22      9.95     .00     .00      .00      .00     9.95 08
```

```
SR497CR-02                          Nationstar Mortgage LLC                    1/24/17  7:41:53
HPUR1036                          DETAIL TRANSACTION HISTORY                  JOB DT:   1/24/17
                                                                               PAGE:       8
---TRANSACTION----              NEXT -AFTER TRANS.BALANCES-    TOTAL  ---------------APPLIED---------------- MISC.PMTS
NBR   DATE   CODE -----DESCRIPTION------  DUE  PRINCIPAL   ESCROW   AMOUNT  PRINCIPAL INTEREST  ESCROW SUSPENSE/CD

LOAN#  ███████████       CONTINUED

          S/F C    REF#
86  7/16/13 1499 ZZZZF-E PAY FEE      8/13  349999.64   4438.22    9.95    .00     .00     .00     .00      9.95 08
          S/F      REF#
85  7/16/13 02   PAYMENT             8/13  349999.64   4438.22  1626.71    .00  802.08  824.63     .00
                        Int pd to: 7/01/13
          S/F IV   REF#
84  6/17/13 1408 ZZZZF-E PAY FEE      7/13  349999.64   3613.59    9.95    .00     .00     .00     .00      9.95 08
          S/F C    REF#
83  6/17/13 1499 ZZZZF-E PAY FEE      7/13  349999.64   3613.59    9.95    .00     .00     .00     .00      9.95 08
          S/F      REF#
82  6/17/13 02   PAYMENT             7/13  349999.64   3613.59  1626.71    .00  802.08  824.63     .00
                        Int pd to: 6/01/13
          S/F IV   REF#
81  5/31/13 6036 TOWN TAX   DISBURSED 6/13  349999.64  2788.96  1407.74-   .00     .00 1407.74-    .00
               PAYEE 36RI008 #0001538629 DUE  6/30/13
          S/F SC   REF# 0001538629
80  5/15/13 1408 ZZZZF-E PAY FEE      6/13  349999.64   4196.70   15.00    .00     .00     .00     .00     15.00 08
          S/F C    REF#
79  5/15/13 1499 ZZZZF-E PAY FEE      6/13  349999.64   4196.70   15.00    .00     .00     .00     .00     15.00 08
          S/F      REF#
78  5/15/13 02   PAYMENT             6/13  349999.64   4196.70  1626.71    .00  802.08  824.63     .00
                        Int pd to: 5/01/13
          S/F SP   REF#
77  4/15/13 1408 ZZZZF-E PAY FEE      5/13  349999.64   3372.07    9.95    .00     .00     .00     .00      9.95 08
          S/F C    REF#
76  4/15/13 1499 ZZZZF-E PAY FEE      5/13  349999.64   3372.07    9.95    .00     .00     .00     .00      9.95 08
          S/F      REF#
75  4/15/13 02   PAYMENT             5/13  349999.64   3372.07  1699.63    .00  875.00  824.63     .00
                        Int pd to: 4/01/13
          S/F IV   REF#
74  3/18/13 1408 ZZZZF-E PAY FEE      4/13  349999.64   2547.44    9.95    .00     .00     .00     .00      9.95 08
   Effective date:  3/16/13
          S/F C    REF#
73  3/18/13 1499 ZZZZF-E PAY FEE      4/13  349999.64   2547.44    9.95    .00     .00     .00     .00      9.95 08
   Effective date:  3/16/13
          S/F      REF#
72  3/18/13 02   PAYMENT             4/13  349999.64   2547.44  1699.63    .00  875.00  824.63     .00
   Effective date:  3/16/13  Int pd to: 3/01/13
          S/F IV   REF#
71  3/08/13 6036 TOWN TAX   DISBURSED 3/13  349999.64  1722.81  1407.74-   .00     .00 1407.74-    .00
               PAYEE 36RI008 #0001373816 DUE  3/30/13
          S/F SC   REF# 0001373816
70  2/19/13 1408 ZZZZF-E PAY FEE      3/13  349999.64   3130.55    9.95    .00     .00     .00     .00      9.95 08
   Effective date:  2/17/13
          S/F C    REF#
69  2/19/13 1499 ZZZZF-E PAY FEE      3/13  349999.64   3130.55    9.95    .00     .00     .00     .00      9.95 08
   Effective date:  2/17/13
          S/F      REF#
68  2/19/13 02   PAYMENT             3/13  349999.64   3130.55  1699.63    .00  875.00  824.63     .00
   Effective date:  2/17/13  Int pd to: 2/01/13
          S/F IV   REF#
```

```
SR497CR-02                          Nationstar Mortgage LLC              1/24/17  7:41:53
HPUR1036                         DETAIL TRANSACTION HISTORY              JOB DT:  1/24/17
                                                                          PAGE:      9
```

| ---TRANSACTION---- NBR DATE CODE -----DESCRIPTION------ | NEXT DUE | -AFTER TRANS.BALANCES- PRINCIPAL   ESCROW | TOTAL AMOUNT | ----------------APPLIED---------------- PRINCIPAL  INTEREST   ESCROW  SUSPENSE/CD | ---- MISC.PMTS |
|---|---|---|---|---|---|
| LOAN# ▮▮▮▮▮▮▮              CONTINUED | | | | | |
| 67  1/16/13 1408 ZZZZF-E PAY FEE | 2/13 | 349999.64   2305.92 | 9.95 | .00      .00      .00      .00 | 9.95 08 |
| S/F C    REF# | | | | | |
| 66  1/16/13 1499 ZZZZF-E PAY FEE | 2/13 | 349999.64   2305.92 | 9.95 | .00      .00      .00      .00 | 9.95 08 |
| S/F    REF# | | | | | |
| 65  1/16/13 02   PAYMENT | 2/13 | 349999.64   2305.92 | 1699.63 | .00   875.00   824.63      .00 | |
| Int pd to: 1/01/13 | | | | | |
| S/F IV   REF# | | | | | |
| 64 12/31/12 10   PMT-INT ON ESCROW | 1/13 | 349999.64   1481.29 | 10.35 | .00      .00    10.35      .00 | |
| S/F CK   REF# I | | | | | |
| 63 12/17/12 1408 ZZZZF-E PAY FEE | 1/13 | 349999.64   1470.94 | 9.95 | .00      .00      .00      .00 | 9.95 08 |
| S/F C    REF# | | | | | |
| 62 12/17/12 1499 ZZZZF-E PAY FEE | 1/13 | 349999.64   1470.94 | 9.95 | .00      .00      .00      .00 | 9.95 08 |
| S/F    REF# | | | | | |
| 61 12/17/12 11   PRINCIPAL PAYMENT | 1/13 | 349999.64   1470.94 | .36 | .36      .00      .00      .00 | |
| S/F IV   REF# | | | | | |
| 60 12/17/12 02   PAYMENT | 1/13 | 350000.00   1470.94 | 1699.63 | .00   875.00   824.63      .00 | |
| Int pd to: 12/01/12 | | | | | |
| S/F IV   REF# | | | | | |
| 59 12/07/12 6036 TOWN TAX    DISBURSED | 12/12 | 350000.00    646.31 | 1407.74- | .00      .00  1407.74-    .00 | |
| PAYEE 36RI008 #0001215446 DUE 12/30/12 | | | | | |
| S/F SC   REF# 0001215446 | | | | | |
| 58 11/16/12 1408 ZZZZF-E PAY FEE | 12/12 | 350000.00   2054.05 | 9.95 | .00      .00      .00      .00 | 9.95 08 |
| S/F C    REF# | | | | | |
| 57 11/16/12 1499 ZZZZF-E PAY FEE | 12/12 | 350000.00   2054.05 | 9.95 | .00      .00      .00      .00 | 9.95 08 |
| 56 11/16/12 02   PAYMENT | 12/12 | 350000.00   2054.05 | 1699.63 | .00   875.00   824.63      .00 | |
| Int pd to: 11/01/12 | | | | | |
| S/F IV   REF# | | | | | |
| 55 10/26/12 6050 HAZARD SFR    DISBURSED | 11/12 | 350000.00   1229.42 | 2719.00- | .00      .00  2719.00-    .00 | |
| PAYEE 5020029 #10262012IN DUE 10/19/12 | | | | | |
| S/F WR   REF# 10262012INS | | | | | |
| 54 10/16/12 1408 ZZZZF-E PAY FEE | 11/12 | 350000.00   3948.42 | 9.95 | .00      .00      .00      .00 | 9.95 08 |
| S/F C    REF# | | | | | |
| 53 10/16/12 1499 ZZZZF-E PAY FEE | 11/12 | 350000.00   3948.42 | 9.95 | .00      .00      .00      .00 | 9.95 08 |
| 52 10/16/12 02   PAYMENT | 11/12 | 350000.00   3948.42 | 1699.63 | .00   875.00   824.63      .00 | |
| Int pd to: 10/01/12 | | | | | |
| S/F IV   REF# | | | | | |
| 51 10/10/12 6051 FLOOD SFR    DISBURSED | 10/12 | 350000.00   3123.79 | 2322.00- | .00      .00  2322.00-    .00 | |
| PAYEE 5100125 #10102012IN DUE 10/24/12 | | | | | |
| S/F WR   REF# 10102012INS | | | | | |
| 50  9/17/12 1408 ZZZZF-E PAY FEE | 10/12 | 350000.00   5445.79 | 10.00 | .00      .00      .00      .00 | 10.00 08 |
| S/F C    REF# | | | | | |
| 49  9/17/12 1499 ZZZZF-E PAY FEE | 10/12 | 350000.00   5445.79 | 10.00 | .00      .00      .00      .00 | 10.00 08 |
| S/F    REF# | | | | | |
| 48  9/17/12 02   PAYMENT | 10/12 | 350000.00   5445.79 | 1699.63 | .00   875.00   824.63      .00 | |
| Int pd to: 9/01/12 | | | | | |
| S/F SP   REF# | | | | | |
| 47  8/31/12 6036 TOWN TAX    DISBURSED | 9/12 | 350000.00   4621.16 | 1407.74- | .00      .00  1407.74-    .00 | |
| PAYEE 36RI008 #0001082816 DUE  9/30/12 | | | | | |
| S/F SC   REF# 0001082816 | | | | | |

```
SR497CR-02                          Nationstar Mortgage LLC                    1/24/17  7:41:53
HPUR1036                          DETAIL TRANSACTION HISTORY                   JOB DT:  1/24/17
                                                                                PAGE:     10

---TRANSACTION----              NEXT -AFTER TRANS.BALANCES-   TOTAL  ---------------APPLIED----------------  MISC.PMTS
 NBR   DATE   CODE -----DESCRIPTION------  DUE  PRINCIPAL   ESCROW   AMOUNT  PRINCIPAL INTEREST  ESCROW SUSPENSE/CD

LOAN# ██████████        CONTINUED

  46  8/16/12 02   PAYMENT             9/12 350000.00  6028.90  1796.97     .00   875.00   921.97     .00
                       Int pd to: 8/01/12
             S/F SP  REF#
  45  7/24/12 600V OVERAGE   DISBURSED 8/12 350000.00  5106.93  1565.28-    .00     .00  1565.28-    .00
             PAYEE PEMENTA #0001043436 DUE  0/00/00
             S/F SC  REF# 0001043436
  44  7/16/12 1408 ZZZZF-E PAY FEE     8/12 350000.00  6672.21     7.50     .00     .00     .00     .00     7.50 08
             S/F C   REF#
  43  7/16/12 1499 ZZZZF-E PAY FEE     8/12 350000.00  6672.21     7.50     .00     .00     .00     .00     7.50 08
             S/F     REF#
  42  7/16/12 02   PAYMENT            8/12 350000.00  6672.21  1796.97     .00   875.00   921.97     .00
                       Int pd to: 7/01/12
             S/F SP  REF#
  41  6/15/12 02   PAYMENT            7/12 350000.00  5750.24  1796.97     .00   875.00   921.97     .00
                       Int pd to: 6/01/12
             S/F SP  REF#
  40  5/31/12 6036 TOWN TAX   DISBURSED 6/12 350000.00  4828.27  1288.90-    .00     .00  1288.90-    .00
             PAYEE 36RI008 #0000994095 DUE  6/30/12
             S/F SC  REF# 0000994095
  39  5/16/12 02   PAYMENT            6/12 350000.00  6117.17  1796.97     .00   875.00   921.97     .00
                       Int pd to: 5/01/12
             S/F SP  REF#
  38  4/16/12 02   PAYMENT            5/12 350000.00  5195.20  1724.05     .00   802.08   921.97     .00
                       Int pd to: 4/01/12
             S/F SP  REF#
  37  3/16/12 1408 ZZZZF-E PAY FEE     4/12 350000.00  4273.23    15.00     .00     .00     .00     .00    15.00 08
             S/F C   REF#
  36  3/16/12 1499 ZZZZF-E PAY FEE     4/12 350000.00  4273.23    15.00     .00     .00     .00     .00    15.00 08
             S/F     REF#
  35  3/16/12 02   PAYMENT            4/12 350000.00  4273.23  1724.05     .00   802.08   921.97     .00
                       Int pd to: 3/01/12
             S/F SP  REF#
  34  3/06/12 6036 TOWN TAX   DISBURSED 3/12 350000.00  3351.26  1288.90-    .00     .00  1288.90-    .00
             PAYEE 36RI008 #0000915536 DUE  3/30/12
             S/F SC  REF# 0000915536
  33  3/05/12 2664 NON CASH FEE ADJ   3/12 350000.00  4640.16    40.10-    .00     .00     .00     .00    40.10-01
             S/F D   REF#
  32  2/29/12 0283 PAYMENT            3/12 350000.00  4640.16  1724.05     .00   802.08   921.97     .00
                       Int pd to: 2/01/12
             S/F SP  REF#
  31  2/16/12 1499 ZZZZF-Late Charges 2/12 350000.00  3718.19    40.10     .00     .00     .00     .00    40.10 01
             S/F     REF#
  30  1/17/12 1408 ZZZZF-E PAY FEE     2/12 350000.00  3718.19     9.95     .00     .00     .00     .00     9.95 08
             Effective date:  1/16/12
             S/F C   REF#
  29  1/17/12 1499 ZZZZF-E PAY FEE     2/12 350000.00  3718.19     9.95     .00     .00     .00     .00     9.95 08
             Effective date:  1/16/12
             S/F     REF#
  28  1/17/12 02   PAYMENT            2/12 350000.00  3718.19  1724.05     .00   802.08   921.97     .00
             Effective date:  1/16/12   Int pd to:  1/01/12
             S/F IV  REF#
```

```
SR497CR-02                        Nationstar Mortgage LLC              1/24/17  7:41:53
HPUR1036                        DETAIL TRANSACTION HISTORY             JOB DT:  1/24/17
                                                                         PAGE:      11
```

| NBR | ---TRANSACTION----<br>DATE   CODE -----DESCRIPTION------ | NEXT<br>DUE | -AFTER TRANS.BALANCES-<br>PRINCIPAL    ESCROW | TOTAL<br>AMOUNT | ---------------APPLIED---------------<br>PRINCIPAL INTEREST   ESCROW SUSPENSE/CD | MISC.PMTS |
|---|---|---|---|---|---|---|

```
LOAN# ████████████        CONTINUED

  27 12/30/11 10   PMT-INT ON ESCROW  1/12  350000.00  2796.22     2.26      .00     .00    2.26      .00
          S/F CK  REF# I
  26 12/15/11 1408 ZZZZF-E PAY FEE    1/12  350000.00  2793.96     7.50      .00     .00     .00      .00      7.50 08
          S/F C   REF#
  25 12/15/11 1499 ZZZZF-E PAY FEE    1/12  350000.00  2793.96     7.50      .00     .00     .00      .00      7.50 08
          S/F     REF#
  24 12/15/11 02   PAYMENT            1/12  350000.00  2793.96  1724.05      .00  802.08  921.97      .00
                     Int pd to: 12/01/11
          S/F SP  REF#
  23 12/05/11 6036 TOWN TAX     DISBURSED 12/11 350000.00 1871.99 1288.90-   .00     .00 1288.90-     .00
          PAYEE 36RI008 #0000818122 DUE 12/30/11
          S/F SC  REF# 0000818122
  22 11/15/11 1408 ZZZZF-E PAY FEE    12/11 350000.00  3160.89    15.00      .00     .00     .00      .00     15.00 08
          S/F C   REF#
  21 11/15/11 1499 ZZZZF-E PAY FEE    12/11 350000.00  3160.89    15.00      .00     .00     .00      .00     15.00 08
          S/F     REF#
  20 11/15/11 02   PAYMENT            12/11 350000.00  3160.89  1724.05      .00  802.08  921.97      .00
                     Int pd to: 11/01/11
          S/F SP  REF#
  19 10/17/11 02   PAYMENT            11/11 350000.00  2238.92  1724.05      .00  802.08  921.97      .00
                     Int pd to: 10/01/11
          S/F SP  REF#
  18 10/06/11 6051 FLOOD SFR    DISBURSED 10/11 350000.00 1316.95 2051.00-   .00     .00 2051.00-     .00
          PAYEE 5100125 #10062011IN DUE 10/24/11
          S/F WR  REF# 10062011INS
  17 10/06/11 6050 HAZARD SFR   DISBURSED 10/11 350000.00 3367.95 2689.00-   .00     .00 2689.00-     .00
          PAYEE 5020029 #10062011IN DUE 10/19/11
          S/F WR  REF# 10062011INS
  16  9/16/11 02   PAYMENT            10/11 350000.00  6056.95  1724.05      .00  802.08  921.97      .00
                     Int pd to: 9/01/11
          S/F SP  REF#
  15  9/02/11 02   PAYMENT             9/11 350000.00  5134.98  1724.05      .00  802.08  921.97      .00
                     Int pd to: 8/01/11
          S/F SP  REF#
  14  8/31/11 6036 TOWN TAX     DISBURSED 8/11 350000.00 4213.01 1288.90-    .00     .00 1288.90-     .00
          PAYEE 36RI008 #0000749095 DUE  9/30/11
          S/F SC  REF# 0000749095
  13  8/17/11 2664 NON CASH FEE ADJ    8/11 350000.00  5501.91    40.10-     .00     .00     .00      .00     40.10-01
          S/F WC  REF#
  12  8/17/11 1499 ZZZZF-Late Charges  8/11 350000.00  5501.91    40.10      .00     .00     .00      .00     40.10 01
          S/F     REF#
  11  8/19/11 2543 ESCROW ADJ          8/11 350000.00  5501.91  5501.91      .00     .00 5501.91      .00
     Effective date:  9/01/10
          S/F LB  REF#
  10  8/19/11 8103 NEW LOAN NOCASH     8/11 350000.00      .00 350000.00- 350000.00-  .00     .00      .00
     Effective date:  9/01/10
          S/F LB  REF#
                * * * * TOTALS * * * *                          349999.64-24062.44
```

# EXHIBIT

# 8

# KORDE & ASSOCIATES, P.C.

Counselors at Law
321 Billerica Road, Suite 210
Chelmsford, Massachusetts 01824-4100
Attorneys Licensed in MA, NH, NY and RI

**Certified Article Number**

9414 7266 9904 2070 1125 96

**SENDERS RECORD**

April 1, 2016

Christopher Pemental
66 And 68 County Road
Barrington, RI 02806

VIA FIRST CLASS MAIL &
CERTIFIED MAIL

Our File No. 14-018852

Dear Sir/Madam:

Please be advised that this office represents Nationstar Mortgage LLC as servicer for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 (Holder) the present holder of your mortgage to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for First Horizon Home Loan Corporation, dated September 7, 2004 in the original principal amount of $350,000.00. The Holder has brought to our attention your delinquent mortgage account regarding the property located at 66 And 68 County Road, Barrington, RI 02806. You are hereby notified that the Holder hereby elects to accelerate the entire indebtedness and declares the entire balance due and payable forthwith and without further notice. Our client has advised that as of April 1, 2016, the amount of the debt is $398,052.97. Please note that because interest and other charges continue to accrue pursuant to the terms of the loan documents, the above figure is subject to change. If you would like a payoff statement on your loan, please contact the undersigned.

You are hereby further notified that it is the intention of the Holder to foreclose said Mortgage under the Power of Sale for breach of the conditions of the loan documents.

Please be advised that the amount necessary to reinstate or pay off your loan changes daily. Therefore, if you desire to reinstate or pay off your loan, please contact this office and it will obtain the amount necessary to reinstate or pay off your loan. Please also be advised, however, that the Holder reserves its right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due.

UNLESS YOU NOTIFY THIS OFFICE WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL YOU A COPY OF SUCH VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THE LAW DOES NOT REQUIRE THIS OFFICE TO WAIT UNTIL THE END OF THE THIRTY (30) DAY PERIOD BEFORE PROCEEDING WITH LEGAL ACTION TO COLLECT THIS DEBT.

IF HOWEVER, YOU REQUEST IN WRITING PROOF OF THE DEBT OR ANY PORTION THEREOF OR IF YOU REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY (30) DAYS FROM THE DATE YOU RECEIVE THIS LETTER, THE FAIR DEBT COLLECTION PRACTICES ACT REQUIRES US TO SUSPEND OUR EFFORTS TO FORECLOSURE THE MORTGAGE ON YOUR PROPERTY, EVEN IF WE HAVE ALREADY INITIATED FORECLOSURE PROCEEDINGS, UNTIL WE MAIL YOU THE REQUESTED INFORMATION.

PLEASE BE ADVISED THAT THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 is aware you have been granted a Chapter 7 Discharge by the United States Bankruptcy Court for the District of Rhode Island in Case #1:07-bk-11093. Accordingly, you will have no personal liability and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 will have no recourse against you in the event a foreclosure sale of your property fails to generate sufficient funds to satisfy the indebtedness secured by the Mortgage.

If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you personally.

Sincerely,

Shana Costa
SC/ac

Telephone (978) 256-1500    Fax (978) 256-7615
Hours of Operation 8:30am - 5:30pm EST, Monday thru Friday.
Website: www.kordeassoc.com

14-018852 / FC01

# KORDE & ASSOCIATES, P.C.

### Counselors at Law
321 Billerica Road, Suite 210
Chelmsford, Massachusetts  01824-4100
Attorneys Licensed in MA, NH, NY and RI



**Certified Article Number**

9414 7266 9904 2070 1125 58

**SENDERS RECORD**

April 1, 2016

Christopher Pemental                                      VIA FIRST CLASS MAIL &
19 Stanley Avenue                                        CERTIFIED MAIL
Barrington, RI 02806

   Our File No. 14-018852

Dear Sir/Madam:

Please be advised that this office represents Nationstar Mortgage LLC as servicer for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 (Holder) the present holder of your mortgage to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for First Horizon Home Loan Corporation, dated September 7, 2004 in the original principal amount of $350,000.00.  The Holder has brought to our attention your delinquent mortgage account regarding the property located at 66 And 68 County Road, Barrington, RI 02806.  You are hereby notified that the Holder hereby elects to accelerate the entire indebtedness and declares the entire balance due and payable forthwith and without further notice.  Our client has advised that as of April 1, 2016, the amount of the debt is $398,052.97.  Please note that because interest and other charges continue to accrue pursuant to the terms of the loan documents, the above figure is subject to change.  If you would like a payoff statement on your loan, please contact the undersigned.

You are hereby further notified that it is the intention of the Holder to foreclose said Mortgage under the Power of Sale for breach of the conditions of the loan documents.

Please be advised that the amount necessary to reinstate or pay off your loan changes daily.  Therefore, if you desire to reinstate or pay off your loan, please contact this office and it will obtain the amount necessary to reinstate or pay off your loan.  Please also be advised, however, that the Holder reserves its right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due.

UNLESS YOU NOTIFY THIS OFFICE WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID.  IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL YOU A COPY OF SUCH VERIFICATION.  IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THE LAW DOES NOT REQUIRE THIS OFFICE TO WAIT UNTIL THE END OF THE THIRTY (30) DAY PERIOD BEFORE PROCEEDING WITH LEGAL ACTION TO COLLECT THIS DEBT.

IF HOWEVER, YOU REQUEST IN WRITING PROOF OF THE DEBT OR ANY PORTION THEREOF OR IF YOU REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY (30) DAYS FROM THE DATE YOU RECEIVE THIS LETTER, THE FAIR DEBT COLLECTION PRACTICES ACT REQUIRES US TO SUSPEND OUR EFFORTS TO FORECLOSURE THE MORTGAGE ON YOUR PROPERTY, EVEN IF WE HAVE ALREADY INITIATED FORECLOSURE PROCEEDINGS, UNTIL WE MAIL YOU THE REQUESTED INFORMATION.

PLEASE BE ADVISED THAT THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 is aware you have been granted a Chapter 7 Discharge by the United States Bankruptcy Court for the District of Rhode Island in Case #1:07-bk-11093.  Accordingly, you will have no personal liability and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 will have no recourse against you in the event a foreclosure sale of your property fails to generate sufficient funds to satisfy the indebtedness secured by the Mortgage.

**If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you personally.**

Sincerely,

Shana Costa
SC/ac

Telephone (978) 256-1500  :  Fax (978) 256-7615
Hours of Operation 8:30am - 5:30pm EST, Monday thru Friday
Website: www.kordeassoc.com

14-018852 / FC01

# KORDE & ASSOCIATES, P.C.

Counselors at Law

321 Billerica Road, Suite 210

Chelmsford, Massachusetts  01824-4100

Attorneys Licensed in MA, NH, NY and RI

**Certified Article Number**

9414 7266 9904 2070 1125 65

**SENDERS RECORD**

April 1, 2016

Christopher Pemental
P.O. Box 750
Bristol, RI 02809

VIA FIRST CLASS MAIL &
CERTIFIED MAIL

Our File No. 14-018852

Dear Sir/Madam:

Please be advised that this office represents Nationstar Mortgage LLC as servicer for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 (Holder) the present holder of your mortgage to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for First Horizon Home Loan Corporation, dated September 7, 2004 in the original principal amount of $350,000.00.  The Holder has brought to our attention your delinquent mortgage account regarding the property located at 66 And 68 County Road, Barrington, RI 02806.  You are hereby notified that the Holder hereby elects to accelerate the entire indebtedness and declares the entire balance due and payable forthwith and without further notice.  Our client has advised that as of April 1, 2016, the amount of the debt is $398,052.97.  Please note that because interest and other charges continue to accrue pursuant to the terms of the loan documents, the above figure is subject to change.  If you would like a payoff statement on your loan, please contact the undersigned.

You are hereby further notified that it is the intention of the Holder to foreclose said Mortgage under the Power of Sale for breach of the conditions of the loan documents.

Please be advised that the amount necessary to reinstate or pay off your loan changes daily.  Therefore, if you desire to reinstate or pay off your loan, please contact this office and it will obtain the amount necessary to reinstate or pay off your loan.  Please also be advised, however, that the Holder reserves its right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due.

UNLESS YOU NOTIFY THIS OFFICE WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID.  IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL YOU A COPY OF SUCH VERIFICATION.  IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THE LAW DOES NOT REQUIRE THIS OFFICE TO WAIT UNTIL THE END OF THE THIRTY (30) DAY PERIOD BEFORE PROCEEDING WITH LEGAL ACTION TO COLLECT THIS DEBT.

IF HOWEVER, YOU REQUEST IN WRITING PROOF OF THE DEBT OR ANY PORTION THEREOF OR IF YOU REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY (30) DAYS FROM THE DATE YOU RECEIVE THIS LETTER, THE FAIR DEBT COLLECTION PRACTICES ACT REQUIRES US TO SUSPEND OUR EFFORTS TO FORECLOSURE THE MORTGAGE ON YOUR PROPERTY, EVEN IF WE HAVE ALREADY INITIATED FORECLOSURE PROCEEDINGS, UNTIL WE MAIL YOU THE REQUESTED INFORMATION.

PLEASE BE ADVISED THAT THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 is aware you have been granted a Chapter 7 Discharge by the United States Bankruptcy Court for the District of Rhode Island in Case #1:07-bk-11093.  Accordingly, you will have no personal liability and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 will have no recourse against you in the event a foreclosure sale of your property fails to generate sufficient funds to satisfy the indebtedness secured by the Mortgage.

**If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you personally.**

Sincerely,

Shana Costa
SC/ac

Telephone (978) 256-1500    Fax (978) 256-7615
Hours of Operation 8:30am - 5:30pm EST, Monday thru Friday
Website: www.kordeassoc.com

14-018852 / FC01

# KORDE & ASSOCIATES, P.C.

### Counselors at Law
321 Billerica Road, Suite 210
Chelmsford, Massachusetts 01824-4100
Attorneys Licensed in MA, NH, NY and RI

**Certified Article Number**

9414 7266 9904 2070 1125 72

**SENDERS RECORD**

April 1, 2016

Christopher Pemental
P.O. Box 250
Bristol, RI 02809

VIA FIRST CLASS MAIL &
CERTIFIED MAIL

Our File No. 14-018852

Dear Sir/Madam:

Please be advised that this office represents Nationstar Mortgage LLC as servicer for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 (Holder) the present holder of your mortgage to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for First Horizon Home Loan Corporation, dated September 7, 2004 in the original principal amount of $350,000.00. The Holder has brought to our attention your delinquent mortgage account regarding the property located at 66 And 68 County Road, Barrington, RI 02806. You are hereby notified that the Holder hereby elects to accelerate the entire indebtedness and declares the entire balance due and payable forthwith and without further notice. Our client has advised that as of April 1, 2016, the amount of the debt is $398,052.97. Please note that because interest and other charges continue to accrue pursuant to the terms of the loan documents, the above figure is subject to change. If you would like a payoff statement on your loan, please contact the undersigned.

You are hereby further notified that it is the intention of the Holder to foreclose said Mortgage under the Power of Sale for breach of the conditions of the loan documents.

Please be advised that the amount necessary to reinstate or pay off your loan changes daily. Therefore, if you desire to reinstate or pay off your loan, please contact this office and it will obtain the amount necessary to reinstate or pay off your loan. Please also be advised, however, that the Holder reserves its right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due.

UNLESS YOU NOTIFY THIS OFFICE WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL YOU A COPY OF SUCH VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THE LAW DOES NOT REQUIRE THIS OFFICE TO WAIT UNTIL THE END OF THE THIRTY (30) DAY PERIOD BEFORE PROCEEDING WITH LEGAL ACTION TO COLLECT THIS DEBT.

IF HOWEVER, YOU REQUEST IN WRITING PROOF OF THE DEBT OR ANY PORTION THEREOF OR IF YOU REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY (30) DAYS FROM THE DATE YOU RECEIVE THIS LETTER, THE FAIR DEBT COLLECTION PRACTICES ACT REQUIRES US TO SUSPEND OUR EFFORTS TO FORECLOSURE THE MORTGAGE ON YOUR PROPERTY, EVEN IF WE HAVE ALREADY INITIATED FORECLOSURE PROCEEDINGS, UNTIL WE MAIL YOU THE REQUESTED INFORMATION.

PLEASE BE ADVISED THAT THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 is aware you have been granted a Chapter 7 Discharge by the United States Bankruptcy Court for the District of Rhode Island in Case #1:07-bk-11093. Accordingly, you will have no personal liability and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 will have no recourse against you in the event a foreclosure sale of your property fails to generate sufficient funds to satisfy the indebtedness secured by the Mortgage.

**If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you personally.**

Sincerely,

Shana Costa
SC/ac

Telephone (978) 256-1500   Fax (978) 256-7615
Hours of Operation 8:30am - 5:30pm EST, Monday thru Friday
Website: www.kordeassoc.com

14-018852 / FC01

# KORDE & ASSOCIATES, P.C.

### Counselors at Law
321 Billerica Road, Suite 210
Chelmsford, Massachusetts  01824-4100
Attorneys Licensed in MA, NH, NY and RI

**Certified Article Number**

9414 7266 9904 2070 1125 89

**SENDERS RECORD**

April 1, 2016

Christopher Pemental
193 Sowams Road, Apt.1
Barrington, RI 02806

VIA FIRST CLASS MAIL &
CERTIFIED MAIL

Our File No. 14-018852

Dear Sir/Madam:

Please be advised that this office represents Nationstar Mortgage LLC as servicer for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 (Holder) the present holder of your mortgage to Mortgage Electronic Registration Systems, Inc. acting solely as nominee for First Horizon Home Loan Corporation, dated September 7, 2004 in the original principal amount of $350,000.00.  The Holder has brought to our attention your delinquent mortgage account regarding the property located at 66 And 68 County Road, Barrington, RI 02806.  You are hereby notified that the Holder hereby elects to accelerate the entire indebtedness and declares the entire balance due and payable forthwith and without further notice.  Our client has advised that as of April 1, 2016, the amount of the debt is $398,052.97.  Please note that because interest and other charges continue to accrue pursuant to the terms of the loan documents, the above figure is subject to change.  If you would like a payoff statement on your loan, please contact the undersigned.

You are hereby further notified that it is the intention of the Holder to foreclose said Mortgage under the Power of Sale for breach of the conditions of the loan documents.

Please be advised that the amount necessary to reinstate or pay off your loan changes daily.  Therefore, if you desire to reinstate or pay off your loan, please contact this office and it will obtain the amount necessary to reinstate or pay off your loan.  Please also be advised, however, that the Holder reserves its right, if allowed by the loan documents and applicable law, to refuse to accept a reinstatement and to insist upon full payment of all amounts due.

UNLESS YOU NOTIFY THIS OFFICE WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID.  IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT AND MAIL YOU A COPY OF SUCH VERIFICATION.  IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THE LAW DOES NOT REQUIRE THIS OFFICE TO WAIT UNTIL THE END OF THE THIRTY (30) DAY PERIOD BEFORE PROCEEDING WITH LEGAL ACTION TO COLLECT THIS DEBT.

IF HOWEVER, YOU REQUEST IN WRITING PROOF OF THE DEBT OR ANY PORTION THEREOF OR IF YOU REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY (30) DAYS FROM THE DATE YOU RECEIVE THIS LETTER, THE FAIR DEBT COLLECTION PRACTICES ACT REQUIRES US TO SUSPEND OUR EFFORTS TO FORECLOSURE THE MORTGAGE ON YOUR PROPERTY, EVEN IF WE HAVE ALREADY INITIATED FORECLOSURE PROCEEDINGS, UNTIL WE MAIL YOU THE REQUESTED INFORMATION.

PLEASE BE ADVISED THAT THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 is aware you have been granted a Chapter 7 Discharge by the United States Bankruptcy Court for the District of Rhode Island in Case #1:07-bk-11093.  Accordingly, you will have no personal liability and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for First Horizon Alternative Mortgage Securities Trust 2004-AA5 will have no recourse against you in the event a foreclosure sale of your property fails to generate sufficient funds to satisfy the indebtedness secured by the Mortgage.

**If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you personally.**

Sincerely,

Shana Costa
SC/ac

Telephone (978) 256-1500   Fax (978) 256-7615
Hours of Operation 8:30am - 5:30pm EST, Monday thru Friday
Website: www.kordeassoc.com

14-018852 / FC01